PHEBE CASE and ANN BATES, Survivors, &c., Appellants, v.
JOHN M. CARROLL, Respondent.

It is a settled principle of equity that no person who is placed in a situation of
trust or confidence in reference to the subject of sale, can be a purchaser
of the property on his own account; but it is at the option of the *cestui que
trust* to repudiate or affirm the transaction, irrespective of any proof of actual
fraud.

Where the complaint averred that the defendant was an attorney and coun-
sellor of the Supreme Court, and the counsel and adviser of the plaintiffs in
relation to the manner of obtaining an outstanding mortgage which was a
lien upon their lands, and using the same for the purpose of enabling them to
obtain and give a clear title to such lands; and after a foreclosure suit was
commenced by the mortgagee, the defendant proposed to pay the mortgage
and take an assignment thereof and hold it for their benefit, they paying him
annual interest on the same; and the said defendant having purchased said
mortgage by paying what was due thereon, with costs of foreclosure: *Held*,
that he could not afterward dissolve his relations with the plaintiffs, and
purchase the lands, under a decree of foreclosure, on his own account.
*Held, further*, that in equity the relation between the plaintiffs and defendant
was that of mortgagors and mortgagee, and their equity of redemption con-
tinued to attach itself to the legal estate, which could not be cut off without
a strict foreclosure, after calling upon the plaintiffs to redeem.

A complaint is not defective in substance for omitting to state conclusions
which are to be implied from other facts sufficiently stated.

The general allegation that the defendant was the plaintiffs' counsel, and
undertook to conduct the foreclosure suit to a decree and sale of the mort-
gaged premises for their benefit, is sufficient to create a *trust* within the
principle of all the cases, which a court of equity will enforce against the de-
fendant, by requiring him to convey the legal title to the plaintiffs, upon being
paid what was necessarily expended by him in procuring such title, and upon
such other terms as the justice of the case may require.

The question of parties plaintiff discussed, and *held*, that the proper parties
were united in the complaint. If, however, there are too many plaintiffs, the
defect cannot be reached by a demurrer.

APPEAL from the judgment of the General Term, affirming
the judgment of the Special Term, dismissing the complaint
on demurrer thereto by the defendant.

It appeared by the complaint that Ebenezer Case died in
April, 1855, having, by his last will and testament, devised
his farm, of about one hundred and seven acres, situated in
Mayfield, Fulton county, to his widow, Eleanor Case, during

her natural life, to be used, occupied and controlled by her, except that his two daughters, Phebe and Ann, were to have a home in the house on said premises during the lifetime of the widow; and after her death, he devised to his said two daughters the house, door-yard and garden. The residue of his estate he devised to his sons and daughters as follows: "To my son Enos Case I give one-thirteenth; and the remaining twelve-thirteenths I give to my son John M. Case and my two daughters, Phebe and Ann Case, to share and share alike."

Enos Case conveyed his interest to Phebe Case, and John M. Case conveyed his interest to Phebe and Ann Case.

The premises were subject to a mortgage executed by Ebenezer Case, July 18, 1843, to Archibald McFarland, for $219, which was afterward assigned to Ellis Clizbe, of Amsterdam. Clizbe commenced a foreclosure of the mortgage by a suit in equity, making the plaintiffs parties defendant, and also Aaron Peck and his wife, who were subsequent judgment creditors, as appeared by the record in the clerk's office.

The complaint charges, in substance, that the defendant, being an attorney and counselor of this court, and residing near the premises, having been the attorney and counsel of Ebenezer Case in his lifetime, and after his death the counselor and advisor of the plaintiffs in all their business matters, and especially in relation to the said bond and mortgage, and the manner of using them to enable the plaintiffs to obtain a good title to the premises, called upon them after the commencement of the foreclosure suit, and offered and proposed to pay the said bond and mortgage and take an assignment thereof from the said Clizbe, *and to hold it as long as the plaintiffs wished him to, on being paid the interest thereof annually;* to which the plaintiffs assented.

The defendant thereupon paid to Clizbe $343.93, the amount due; but instead of taking an absolute assignment in the first instance, agreed in writing with Clizbe to conduct the suit of foreclosure to a decree; and then Clizbe was to assign him the bond and mortgage as well as the decree, he, the defendant, paying the costs of the attorneys in the fore-

closure suit.  A decree was obtained in the spring of 1857. At that time the plaintiffs had an opportunity to sell the mortgaged premises for $2,000, but were embarrassed on account of the apparent lien of the Peck judgment; all of which was known to the defendant, who proposed to the plaintiffs, and *advised them*, to have the premises sold under the decree, when it could be bid off for them and a clear title obtained.  To this they assented.

A few days before the sale, which was to take place September 19, 1857, the defendant informed the plaintiffs that he should like to have his money on the mortgage.  In order to oblige him, they made an arrangement with John S. Crane, of Amsterdam, to attend the sale and bid off the farm, and hold it until they could raise the money by sale, or otherwise, and repay him.

They relied upon the arrangement, and did not attend the sale; but for some reason unknown to them, although they suppose it was in consequence of a conversation the defendant's brother had with Crane the night previous, Crane did not attend the sale; and the farm was struck off to the defendant for some $500, sufficient to cover the amount due, with costs of foreclosure.

The defendant did not claim to the plaintiffs that he intended to hold the premises as his own, until, in March, 1858, when he informed them that they were not for sale. He induced the widow, by promises, and threats to go to law, to execute a deed of release to him of her dower in the premises, in which she retained a right to a portion of the dwelling house during her life, and about one-eighth of an acre of land in the northeast corner of the garden, with certain other privileges of wood and water, he agreeing to pay her in addition the sum of $25 per year during her natural life.  He then put a tenant in possession of a part of the house, and of the land.  The widow was then nearly eighty years of age, blind and very infirm, and nearly helpless. And it is alleged, in the complaint, that her signature was obtained by threats and undue influence.  The value of the farm was $2,000; and the plaintiffs aver that they could

sell it for that sum if they could give a good title. The plaintiffs thereupon demand an accounting; and on paying what is justly due the defendant, which they offer to pay as the court shall direct, they ask for a decree, directing the defendant to convey to them, or such person as they shall name, the premises in question, by a good and sufficient conveyance, free from all incumbrances thereon, made or suffered by him; and for such other or further relief as the nature of the case may require.

The defendant's demurrer is divided into nineteen paragraphs, or divisions and subdivisions. The first ground of demurrer is, that the complaint does not state facts sufficient to constitute a cause of action. The other objections to the complaint are, that there is a defect of parties plaintiff and defendant, and a misjoinder of parties plaintiff, as well as causes of action.

*D. P. Corey*, for the appellants.

*J. H. Reynolds*, for the respondent.

MORGAN, J. There are two grounds upon which the plaintiffs' complaint may be sustained; either by considering the defendant as the plaintiffs' agent in the purchase of the mortgaged premises, or as occupying the position of an attorney and counsel. The result is the same, whether he is considered in one relation or the other. It is a settled principle of equity, that no person, who is placed in a situation of trust or confidence in reference to the subject of the sale, can be a purchaser of the property on his own account. And this principle is not confined to a particular class of persons, such as guardians, trustees or solicitors, but is a rule of universal application to all persons coming within its principle; which is, that no party can be permitted to purchase an interest where he has a duty to perform inconsistent with the character of a purchaser. (*Torrey* v. *Bank of Orleans*, 9 Paige, 650, and cases there cited.) In *Cumberland Coal Co.* v. *Sherman* (30 Barb., 553), this principle was applied to the case of a mere agency. It is not necessary

for a party seeking to avoid a contract on this ground to show that an improper advantage has been gained over him. It is at his option to repudiate or to affirm the contract, irrespective of any proof of actual fraud. (DENIO, J., in *N. Y. Central Ins. Co.* v. *National Protection Insurance Co.*, 14 N. Y., 91.) So an agent who discovers a defect in the title of his principal to lands cannot misuse it to acquire a title for himself, but will be held a trustee for his principal. (Story on Agency, § 211.)

While the principle of these cases was not disputed in the opinion of the two judges who united in affirming the judgment of the Special Term, sustaining the defendant's demurrer to the plaintiffs' complaint in this action, it was denied that the defendant occupied any relation of trust or confidence toward the plaintiffs which prohibited his purchasing the farm in question on his own account. I am unable to concur in this conclusion. The averment is, that the defendant was an attorney and counsellor of this court, and the counsel and adviser of the plaintiffs in relation to the bond and mortgage, and the manner of obtaining and using them for the purpose of enabling them to obtain and give a clear title to the farm; that, after the foreclosure of the McFarlane mortgage was commenced, he called upon the plaintiffs, and proposed to pay the bond and mortgage and take an assignment thereof, *and hold it for their benefit*, they paying him annual interest on the same; that when they had an opportunity to sell the premises for $2,000, and could not, by reason of the apparent lien of an old judgment thereon, in favor of Aaron Peck and his wife, *he advised them to have the foreclosure suit go on*, and that a clear and perfect title could be procured by a sale of the premises in the foreclosure suit; which the plaintiffs assented to, and the defendant proceeded with the sale accordingly. Up to this time there can be no pretense that the defendant did not act as their counsel and agent.

Now, what is there in the allegations of the complaint to relieve him from this position? It is said in the complaint that, a few days before the sale the defendant informed the plaintiffs that he should like to have his money on the mort-

gage. They failed to raise the money; and the defendant, without further notice, bid in the premises, and then for the first time claimed that he bought them on his own account. If he had informed them of his design to bid them in on his own account they would at least have understood his position and might have found another purchaser who was willing to take the defendant's place. But I think they were not required to find another purchaser in order to preserve their equitable right to redeem the property. In equity, the relation between the plaintiffs and defendant was that of mortgagors and mortgagee; and their equity of redemption could not be cut off by him without a strict foreclosure, or foreclosure and sale, in a court of equity. The way to dissolve such a relation is well settled, and that is, to call upon the plaintiffs to redeem or be foreclosed.

If the defendant had sold to a third person, with the plaintiffs' consent, their equity would have attached to the surplus; but, being himself the purchaser, their equity of redemption still continues to attach itself to the legal estate. (*Slee* v. *Manhattan Co.*, 1 Paige, 48; *Hoyt* v. *Martense*, 16 N. Y., 231.)

But it is said that the complaint is defective, in not stating a legal duty or trust on the part of the defendant. When it is alleged that he was their counsel and adviser in relation to the bond and mortgage, and the manner of obtaining and using them, for the purpose of enabling them to obtain and give a good and clear title; and, when it is alleged that he offered to buy the bond and mortgage, and take an assignment thereof, and hold it for the benefit of the plaintiffs; and when it is further alleged that, in order to clear the title, the defendant proposed and advised them to have the foreclosure suit continued to a sale of the property, and that upon such sale it could be bid off for them; the law, without further allegation, will imply an obligation and duty on the part of the defendant, sufficient to create a *trust* within the principle of all the cases. Connected with this, it is also said that there is no allegation of deceit, artifice or unfair conduct on the part of the defendant. But, when the relation of attorney and client, or principal and agent, is once established, the bur-

den is cast upon the defendant to show perfect fairness in the transaction, and that he did not take advantage of his confidential relations with the plaintiffs to gain a personal advantage. The complaint is not defective in substance for omitting to state conclusions which are to be implied from other facts sufficiently stated. If the case is defectively stated, the remedy of the defendant is by motion to make it more certain and definite by amendment. (Code, § 160.) Thus, in *Prindle* v. *Caruthers* (15 N. Y., 425), upon demurrer, the complaint was held good under the Code, although it did not aver any consideration for the contract upon which the suit was brought. The complaint in that case also stated, in general terms, that the contract became the property of the plaintiff by purchase, without stating when, from whom or upon what consideration; yet it was held that these defects could not be reached by a demurrer.

But the complaint in the case at bar is not defective for not stating more definitely the circumstances under which the defendant was retained as counsel and undertook to manage the foreclosure suit. The general allegation that he was the defendant's counsel and undertook to conduct it for their benefit, is sufficient to create a trust, which a court of equity will enforce against the defendant by requiring him to convey the legal title of the premises to these plaintiffs, upon being paid what was necessarily expended by him in procuring it, and upon such other terms as the justice of the case may require.

We know nothing of the transaction except what is stated in the plaintiffs' complaint. For the purposes of this appeal, the allegations of the complaint must be taken to be true, however inartificially presented.

We think, upon the complaint, the plaintiffs are plainly entitled to the equitable relief prayed for.

There are some other questions raised by the demurrer, but they are without foundation in law. There is no defect of parties, as all are made parties who have any interest in the relief prayed for. But if there are too many plaintiffs, the defect cannot be reached by a demurrer. (Code. § 117.)

Nor is there any misjoinder of causes of action. The right of the two daughters to have a home in the house of their mother while she lived, was very much restricted, if not rendered entirely valueless, by the agreement under which the possession of a part of it was surrendered to the defendant. They were not parties to that agreement, and have an undoubted right to have it removed out of the way, in case they are entitled to the legal estate. That agreement would necessarily fall with the title upon which it was based. Considering the circumstances under which it was obtained, I think the court would have no difficulty in relieving the widow, as well as her daughters, from its incumbrance.

In my opinion the judgment of the Supreme Court, both at General and Special Term, should be reversed, with costs, and that an order should be entered in the Supreme Court, overruling the demurrer, and allowing the defendant to answer upon the usual terms.

Judgment accordingly.