JAMES A. PENMAN, Administrator of JAMES PENMAN, deceased, Respondent, v. JOSEPH SLOCUM, Appellant.

The defendant contracted to sell certain lands, owned by him in Pennsylvania, to the plaintiff and one J., for the sum of $75,000, payable in sixty days, $15,000 in cash and the balance in five equal annual payments; and by a separate instrument, it was agreed that if the plaintiff and J. should make a sale, they were to have $5,000 each, and each one-third of all over $75,000; and they were to have the same, if the defendant should make the sale. Within the sixty days, the defendant sold to one R. for $90,000, $20,000 down and the balance in five years; and thereupon the defendant made a new agreement with the plaintiff and J., that he should have $67,000 of the purchase money, they $4,000 each, and the balance be equally divided between the three.

R. paid $20,000, took a deed, and gave a bond and mortgage for the remaining $70,000, and warrant of attorney to enter judgment on the bond and issue execution in case of default. The defendant paid to the plaintiff and J. $4,000 each, and paid interest on $5,000 to each as long as R. paid interest on the bond and mortgage to him. R. having at length

made default, the defendant issued execution, under which the lands were publicly sold, and were bid off by defendant for $10,800 ; and having perfected title, he subsequently sold them to one B. for $70,000. Twenty thousand dollars of this having been paid the defendant, the plaintiff brought this action, and subsequently, B. having paid the defendant the balance of the $70,000, by a supplemental complaint, claimed to recover of the defendant the sum of $5,000 and interest from the date of the sale to B.—*Held*, (GROVER, MURRAY and DANIELS, JJ., *contra*), that the defendant must be regarded as having acted as a *quasi* trustee for the plaintiff to the extent of one-third of the surplus over $75,000, in bidding off the lands on the sale of R.'s interest, and in the subsequent sale to B.; and having received in all the sum of $15,000 more than the $67,000 he was to receive under his last contract with the plaintiff and J., and the $8,000 paid them, he was bound in equity, under that contract, to account and pay over to the plaintiff one-third of that surplus.

*Held*, further, that the action having been commenced after the sale to B., but before the defendant had actually received the sum in the aggregate, which he was entitled to receive before any division of surplus, was nevertheless not prematurely brought, but could have been originally maintained for the purpose of establishing the trust and declaring the plaintiff's rights, and the supplemental complaint, setting up the receipt of the whole $70,000 from B. by the plaintiff, subsequent to the commencement of the action, and thereupon claiming the immediate recovery of the $5,000 and interest, was properly allowed.

*Held*, further, that J., the co-contractor of the plaintiff, was not a necessary party to the action.

(Argued June 16th, 1869, and decided September 23d, 1869.)

THIS is an appeal from a judgment of the General Term of the Supreme Court in the first judicial district, affirming a judgment in favor of the plaintiff entered on the report of WILLIAM F. ALLEN, referee.

In July, 1855, the defendant owning land situated in Providence, Pa., entered into an agreement with plaintiff's intestate and J. J. Slocum, " to sell and convey the same to them, provided, they in sixty days paid him the sum of $75,000 ; $15,000 in cash, and balance in five equal annual payments secured by bond and mortgage ; reserving the power in himself to sell the land, at not less than $75,000, on giving said parties twenty-four hours notice ; and in a separate instrument, further agreeing to give to said intestate and J. J. Slocum $5,000 each, if they should make a sale according to

the terms above set forth; but in case they should fail to make a sale, and defendant should make a sale, he was to pay them $5,000 each, keeping to himself $10,000 out of the first payment; and all over $75,000 to be divided equally."

Within the sixty days, and on the 8th day of August, 1855, defendant, with the knowledge and assent of the others, made a sale of the lands to one Remington for $90,000; $500 to be paid down, $19,500 September 1st, 1855, and the balance on or before September 1, 1860. On the same day, the parties (the plaintiff, Slocum and the defendant), executed, as between themselves, a further agreement, modifying their former one, agreeing that defendant should first receive of the purchase money from Remington $67,000; the others receiving $8,000, and the balance be equally divided between the three.

The contract with Remington, calling for 600 acres, and it being necessary that to make up that amount, the defendant should include some lands, the title to which was disputed by the Scranton Coal Co., it was also agreed that the defendant might retain the plaintiff's and J.'s portions of the money until the dispute was settled, or the plaintiff and J. secured defendant on his warranty.

On the 22d of August, 1855, Remington paid the $20,000; defendant gave him a deed and took back a bond and mortgage for the $70,000, accompanied by a warrant of attorney, to enter judgment on the bond, execution not to issue until default. Of the $20,000 received, $4,000 was paid to the plaintiff's intestate, and $4,000 to J. J. Slocum; and subsequently the defendant paid them interest on the $5,000 each, as long as Remington paid him interest on the $70,000.

In 1858, Remington made default, and, thereupon, execution was issued on the judgment entered on the warrant of attorney; the premises sold and bid off by the defendant for $10,300. On the 27th day of November, 1858, the defendant again sold the premises to one Beekman, for $70,000, and interest from the time Remington ceased to pay. $20,000, and the arrears of interest, was paid before December, 1863.

This action was commenced January 15, 1864, to compel the defendant to perform said agreement, and to recover $5,000, one-third of the surplus of $15,000, and interest, from the date of the sale, to Beekman.

In February, 1865, after issue joined in this action, Beekman paid to defendant the balance of the purchase price of said land. Thereupon, on application to the Special Term, leave was granted to the plaintiff to file and serve a supplemental complaint, without prejudice to the proceedings theretofore had in the action; and further ordering that if on the trial it was held that plaintiff was not entitled to any relief, without proof that defendant had received the whole $70,000, that then the referee should determine the legal effect of said sum not being received before suit brought, having been alleged for the first time in said supplemental complaint; and should give such judgment, or prescribe such terms, with reference thereto, as should be agreeable to law and equity, and the rules and ·practice of the court.

After finding the facts as above set forth, and that the defendant's dispute with the Stranton's, as to the title, was settled, the referee stated his conclusions of law as follows: That upon the facts existing at the time of the commencement of this action, and before the payment of the whole purchase money, the plaintiff was entitled to maintain this action, and to a judgment declaring his rights in the premises; and it was, therefore, a proper case for a supplemental complaint, the payment of the entire purchase money, varying the form of the relief to which the plaintiff is entitled.

That upon the facts alleged and proved, the said J. J. Slocum was not a necessary party to the action.

That plaintiff is entitled to recover of and from the said defendant the sum of $5,000, and interest from 27th day of November, 1858, as so much money had and received by the said defendant, to and for the use of the said plaintiff. These conclusions were duly excepted to.

*Max Goepp*, for the appellant, that a court of equity would not imply any trust in the defendant, for the benefit of plaintiff, neither as to the land or the purchase money; and that the mere breach of a parol contract to convey land, does not make the vendor a trustee for the vendee, cited Story's Eq. Jur., § 1195; Brightly's Eq. Jur., 337; Willis on Trustees, ch. 1, p. 2; *Van Epps* v. *Van Epps* (9 Paige, 237); *Robertson* v. *Watts* (9 Watts, 32); *Hogg* v. *Wilkins* (1 Grant's Cases, 67); *Patteson* v. *Hern* (id., 310); *Kellum* v. *Smith* (33 Pa., 158); *Bamel* v. *Dougherty* (32 Pa., 371); *Smith* v. *Smith* (27 Pa., 180); *Bottsford* v. *Burr* (2 Johns. Ch. R.; *Smith* v. *Reber* (1 Grant's Cases, 217); *Chambers* v. *Jaynes* (4 Barr., 39); *Lehigh Co.* v. *Harlan* (27 Pa., 429).

The representatives of J. J. Slocum, were necessary parties to the action. (*Hallett* v. *Hallett*, 2 Paige, 19; *Dean* v. *Chamberlain*, 6 Duer, 691; Code, § 119; *Hawley* v. *Cramer*, 4 Cow., 728.)

The action as to the proceeds of sale to Beekman, was prematurely brought, and a supplemental complaint could not aid this defect. (*Watson* v. *Shehan*, 17 Abb., 184; *McCullock* v. *Colly*, 4 Bosw., 603; 5 id., 477; *Chandler* v. *Petit*, 1 Paige, 168.)

*William Allen Butler*, for the respondents, on the general question, as to the right to hold the defendant liable to account for the proceeds of the sale to Beekman, cited *Day* v. *Roth* (18 N. Y., 449, 453); Story's Coms. on Eq., §§ 1196, 1210, 1211; *Campbell* v. *Walker* (5 Ves. J., 678); *Ex parte* Lacy, 6 id., 381; *Ex parte* Bennett, 10 id., 381; *Landerson* v. *Walker* (13 id., 601); *Holdridge* v. *Gillespie* (2 John. Ch. R., 30); *Davoue* v. *Fanning* (2 id., 252); *Flagg* v. *Mann* (2 Sumner, 486); *Van Epps* v. *Van Epps* (9 Paige, 237); *Torry* v. *Bank of Orleans* (id., 647, affirmed 7 Hill, 260); *Michaud* v. *Girod* (4 How. U. S., 503); *Jewett* v. *Miller* (10 N. Y., 402); *Ryan* v. *Dox* (34 N. Y., 307); *Case* v. *Carroll* (35 N. Y., 385); *Flagg* v. *Mann* (1 Sumner, 486). As to the alleged nonjoinder, he cited *Van Wart* v. *Price* (14 Abb., 4 n).

JAMES, J. The validity of the two contracts of July 3d, 1855, was not questioned on the trial. Their validity being conceded, the plaintiff's intestate, and J. J. Slocum acquired the right to purchase or sell the lands, at any time within the next sixty days, subject to the defendant's right to sell; in which event they were each to have a sum specified. This was a valuable interest, and formed a sufficient consideration for the subsequent agreement of August 8th, 1855.

By that agreement, defendant was to sell said property to Remington for $90,000, and out of the first proceeds to retain $67,000; then to pay said testator and J. J. Slocum $8,000, and divide the balance equally between the three. The sale was made accordingly, and defendant received $20,000, and took to himself a bond and mortgage, with warrant of attorney to enter judgment for balance. By this arrangement, the plaintiff's testator became vested with an interest in the securities thus taken by the defendant, equal to $9,000; and a liability thereby devolved upon the defendant to account to him for the proceeds of said security, to such an amount. In other words, a trust resulted from the agreement and sale, and vested upon the defendant, to be performed according to the interest of the party thereto. "Implied trusts," says Story (Eq. Jur., § 1195), are of two classes; "*first*, those which stand upon the presumed intention of the parties; and *second*, those which stand independent of any such intention, and are forced upon the conscience of the party by the operation of law." And although it has been said to be a general rule, that the law never implies, and a court of equity never presumes a trust, except in case of absolute necessity, Story says, that "it is stating the doctrine a little too strongly; and the more correct exposition of the rule is, that a trust is never presumed or implied, as intended by the parties, unless, taking all the circumstances together, that is the fair and reasonable interpretation of their acts and transactions." That is precisely this case. Here the three parties had an interest in land; an arrangement was made between them, whereby the defendant was to sell and convey, receive the proceeds to be

paid down, and take securities for the balance in his own name, and when received, make distribution as therein provided. This arrangement is susceptible of no reasonable interpretation other than that the parties intended that defendant should become a trustee for the others in receiving and distributing the proceeds of the sale. (Story's Eq. Jur., § 1195, &c., on implied Trusts; *Ryan* v. *Dox*, 34 N. Y., 307; *Campbell* v. *Walker*, 5 Ves., 678.)

Being a trustee, the purchase by him of the premises, under the judgment entered for the balance of the unpaid purchase money, inured to the benefit of his *cestui que trust* in the proportion of their interest in that security. " It is a settled principle of equity, that no person who is placed in a situation of trust or confidence in reference to the subject of sale, can become a purchaser of the property on his own account." (*Case* v. *Carroll*, 35 N. Y., 385.) The defendant, on purchase of said property, held it as trustee for the benefit of those originally interested in the security; and his subsequent sale to Beekman, inured also for the benefit of such trust, and for which he is liable to account. (*Flagg* v. *Mann*, 1 Sumner, 486, and cases cited.)

The principles of law, governing the preceding branch of the case, are so well settled that I do not deem it necessary to marshall or review the authorities in support of it.

The non-joinder of J. J. Slocum as a party, if a defect, appeared upon the face of the complaint, and was waived by failure to demur. (Code, §§ 144, 147, 148.) But aside from the question of pleading there was in reality no defect of parties. The interest of plaintiff's intestate, in the price received for said land over and above $75,000, was an ascertained, distinct and definite interest, not depending upon any privity or community of interest with J. J. Slocum, or requiring any accounting with him.

I have been somewhat embarrassed with regard to the plaintiff's right of action when this suit commenced. As an action simply to recover the third of the $15,000 surplus, it was prematurely brought. By the terms of the agreement

of August 8th, 1855, the defendant was not bound to account until the money was received; and the money was not received until after this action was commenced.

A supplemental complaint may be resorted to where facts have occurred subsequent to the commencement of the action which vary the relief to which the plaintiff was at that time entitled. I think it may be said, as held by the referee, that at the time this action was commenced, upon the facts as proved, the plaintiff was entitled to a judgment declaring his rights in the premises; if so, the subsequent payment of the whole of the purchase money varied the relief to which the plaintiff was entitled when the action was brought, and presented a proper case for a supplemental complaint. But the order allowing a supplemental complaint provided that, if the referee, before whom the action was to be tried, should be of the opinion that plaintiff was not entitled to any relief without proof that defendant received the $70,000 mentioned in said supplemental complaint, that then said referee should determine the question of the legal effect of the said fact not having occurred before suit brought, and should give such judgment or prescribe such terms with reference thereto as should be agreeable to law and equity and the rules and practice of court. This order was not appealed from, and it therefore binds and controls the parties in the proceedings under it. It constituted the referee an arbitrator of the questions presented by it, whose decision was final. The facts established by the referee outside the supplemental complaint entitled the plaintiff to a judgment defining his rights under the agreements and for an account of the money when received; and these facts, together with those found and declared under authority of the supplemental complaint, entitled plaintiff to further judgment for the amount received.

The other points presented by the appellant, but not pressed, are not well taken.

Judgment affirmed.

GROVER, J. (dissenting.)   The two contracts, between the appellant of the one part and the plaintiff's intestate and Jonathan J. Slocum, entered into July 3d, 1855, relating to the same subject-matter, and made at the same time, must be read and construed as one contract.   When so read and construed they show, not that the appellant agreed to sell, and the intestate and J. J. Slocum to purchase, from him the tract of land then owned by the appellant in Luzerne county, Penn., for the sum of $75,000, payable as is therein specified, but that the appellant employed and authorized them to sell the lands for him, on the terms therein specified, at any time within sixty days from the date of the contracts; and in case they effected a sale of the lands within the time, the appellant agreed to pay to each of them $5,000 as compensation therefor, and to each one-third of the excess over $75,000, for which the land should be sold; and the appellant further agreed, that in case they failed to make a sale of the land, and he himself should make a sale within the sixty days, that in that case, he would pay to each of them the sums as above stated.   That this is the true construction of the contracts read together, will scarcely admit of a doubt; and I think it equally clear that the intestate and J. J. Slocum did not, by virtue of the contracts, acquire any interest in, or lien upon the land; certainly not until a sale was effected in pursuance thereof.   Whether, upon a sale being effected, they acquired a lien upon the purchase money for their compensation, it is not material to inquire, for, as we shall see, the contract upon the occurrence of this event was modified by the parties. The finding of the referee shows that within the sixty days, and on the 8th day of August, the intestate and J. J. Slocum not having effected a sale, the appellant, with their assent, entered into an agreement in writing, by which the appellant agreed to sell and convey to Remington the lands in question, together with an additional acre, upon which there was situated a house in which he resided, and to give additional covenants, in respect to the title, for the sum of $90,000 to be paid and secured as specified in the contract; and

thereupon, on the same day, the appellant, intestate and J. J. Slocum, entered into a new contract, modifying the previous contract, and fixing the rights of the parties in reference to the contract made with Remington. By the contract as modified, the appellant was to receive $67,000 of the $90,000 of purchase money, instead of $65,000, as provided in the first contract, out of the first $75,000, and the intestate and J. J. Slocum the sum of $4,000 each in lieu of the $5,000 each, as provided by the first contract; and the remaining $15,000 was to be shared equally by the three as provided in the first contract. This last contract must be construed with reference to the first, and also with that of the appellant with Remington. By the first it was provided that, upon a sale, a portion of the purchase money should be paid down, and that time should be given for the balance with security upon the land. The Remington contract contains similar provisions in these respects. The appellant claims that he is entitled to judgment in his favor for the $4,000 paid by him to the intestate upon making the contract with Remington. This is claimed upon the ground that, by the modified contract, the appellant is entitled to the first $67,000 paid or collected upon the contract, and that this amount never having been paid or collected, neither the intestate or Slocum ever became entitled to receive anything. This is a misconstruction of the contract. By the first contract, the intestate and Slocum were each entitled to receive $5,000 upon the consummation of a contract of sale as therein provided, irrespective of the question, whether that portion of the purchase money for which time was to be given, and security upon the land taken was ever paid or not. Although, if the last contract was alone to be regarded, there would be some color for the claim of the appellant, that payment to the intestate and J. J. Slocum, should be wholly postponed until after the appellant had received $67,000, an examination of this in connection with the first contract, which is modified by it, together with the Remington contract, will show that such was not the intention of the parties. That all

the modification of the first contract, in respect to the first payment to the intestate and Slocum intended, was to reduce the amount from $5,000 to $4,000. That this sum was due from the appellant to each of them, upon Remington's paying the $20,000, receiving a conveyance for the land, and giving security for the balance of the purchase money. The appellant acted upon this construction in making the payment, and had no claim to recover it, surely, whether any portion of the residue of the purchase money was ever paid or not. The referee was right in disallowing this claim, and also the claim made by the appellant, for the amount of interest paid by him to the intestate upon the $5,000, which would have been payable to the latter, had the whole residue of the purchase money been paid or collected. The appellant received and paid to the intestate this interest. A more difficult question in the case, is whether the appellant took the title to the land purchased by him upon the judgment charged with any trust in favor of the intestate. This judgment, together with a mortgage upon the land, was by the assent of all the parties, taken by the appellant in his own name for the purpose of first securing to him the payment of the sum of $57,000, and interest, to his own use ; and for the further purpose, after the last mentioned sum was paid, of securing payment of the further sum of $15,000, and interest, which was to be equally divided among the parties. We have seen that the intestate had no claim upon the land when sold. How, then, stands the case ? The intestate and Slocum had a claim for $5,000 each, in case the whole residue of the purchase money was paid, or of one-third of the excess thereof paid over $57,000, and interest. In other words, the inquiry is whether any property purchased by a party upon a judgment in his favor, upon which he has the right to collect $57,000 to his own use, after which it is his duty to collect thereon, if practicable, a further sum for the benefit of others, is charged in his hands with a trust in favor of such others, although the sum collected comes far short of what he has the right to collect for himself in the first instance. I am wholly unable to understand upon

what principle such trust arises. The question must be considered in the light of perfect good faith upon the part of the purchaser. There is no finding or evidence warranting a finding that the appellant did not proceed with fairness and collect all that he was able to collect in the judgment. He is held liable upon an entirely different ground. That ground is, that because it was his duty to collect $5,000 for the intestate, after collecting $57,000 for himself, he could not become the purchaser of any property sold upon an execution issued upon the judgment, but that all such purchases made by him, and the proceeds thereof when sold by him, must be accounted for by him the same as money collected upon the judgment; and that such property and proceeds, when amounting to a sum sufficient to pay his own claim, must be paid to the others in like manner, as money paid or collected upon the judgment. I cannot concur in this reasoning. The intestate and J. J. Slocum had no interest in the first $57,000. To this extent the judgment belonged wholly to the appellant. He, as to this portion, was in no respect a trustee for the other parties. He had the right to collect this amount the same as though no others had an interest in the judgment. His relation to them as to the residue of the judgment in no way disabled him from purchasing for himself upon the execution sale to the extent of his own exclusive interest; after this was exhausted, had he made further purchases, another question, not now necessary to consider, would have been presented upon the facts found by the referee, as also all the evidence authorizing additional findings. I think the referee erred in holding the appellant a trustee for the intestate of the land purchased by him at the execution sale and of the proceeds of the sale made by him of such land. I also think the referee erred in his conclusion upon the facts that the plaintiff was entitled to recover, notwithstanding the claim of Scranton or of the Scranton Coal Company. The intestate and J. J. Slocum agreed with the appellant in the contract of the 8th of August, that he might retain in his hands their proportion of the purchase money of the lands included in

the sale to Remington, claimed by Scranton or the Scranton Coal Company, until the dispute should be settled or until they should secure him against his warranty of the title thereof. All the finding, and all that the evidence tends to show in regard to this matter was, that the whole quantity of land embraced in the contract to Remington was 600 acres; that the title to fifty acres thereof, which was of the same proportional value as the residue, was claimed by Scranton or the Scranton Company; that under such claim the claimant had entered and cut timber, for which the appellant had commenced an action; that the appellant subsequently discontinued such action, for what reason did not appear; that the fifty acres were unoccupied and had never been in the actual possession of any one. How these facts could warrant the conclusion that the dispute was settled, I am unable to perceive; and yet there was no pretense that anything more had been done showing a settlement of the dispute, and no pretense that any indemnity against the claim had been given or offered by the intestate and J. J. Slocum, or either. Yet judgment for the entire amount is given against the appellant, upon the ground that the dispute was terminated. The burden of showing that it had been settled, and how, was clearly upon the plaintiff. My conclusion is, that for this reason, as well as upon the ground first stated, the judgment should be reversed and a new trial ordered.

HUNT, Ch. J., WOODRUFF, MASON and LOTT, JJ., concurred with JAMES, J., for affirmance.

MURRAY and DANIELS, JJ., with GROVER, J., for reversal. Judgment affirmed.