TURNER vs. PIERCE, impleaded, etc.

1. CONTRACTS. *Land Contract — Anticipated payment and conveyance of part of the land; effect as to subsequent installments.— Failure of title as to part of lands; effect upon installments of purchase price.*

2. PLEADING AND PRACTICE. *Strict foreclosure of land contract.— Supplemental complaint for personal demands, arising after suit brought.— Effect of order, made upon consent, permitting such complaint to be filed.*

1. Plaintiff, in 1863, gave defendant a written contract for the sale and conveyance of certain lands, to be paid for in installments of $1,000 each, on the 1st of August, in 1865, and the four following years, and $600 on the 1st of August, 1870; interest on the whole amount unpaid to become due on the 1st of August of each of said years. Payment of $1,000 cash is also acknowledged in the contract, but the same was

Turner vs. Pierce, impleaded, etc.

not in fact so paid, but defendant's note therefor given, payable in October, 1864, with interest, and secured by mortgage. Defendant was to be allowed to pay any installments *before* they became due; and, on payment of the two falling due in 1865 and 1866, plaintiff was to convey to him the whole of said lands, taking back a mortgage thereof for the unpaid balance. In August, 1864, defendant paid $4,000 (partly in money, partly by discharging certain incumbrances on the land, and partly by note and mortgage), and his note and mortgage maturing in October following were surrendered and cancelled; and plaintiff receipted for the $4,000 as " paid upon the contract;" and it does not appear that there was any agreement to modify the original contract further than it might be necessarily modified by said transactions. Defendant having made no further payments either of principal or interest, this action was commenced for a strict foreclosure of said contract, in March, 1866. *Held*, that the $4,000 must be applied on the payments first becoming due, and that there was nothing due on the contract when the action was brought.

2. It was error, therefore, to treat the $4,000 as simply a payment in full for the lands then conveyed to defendant, and to regard the remainder of the original purchase price for the whole of the lands named in the contract as payable in proportional installments in each of the several years there specified.

3. The title to a part of the lands embraced in said contract (and *not* conveyed in 1864) having failed, each installment should be reduced in the proportion that the value of such part ($1,832) bears to the value of the whole of said lands ($6,600); and defendant was entitled to have the $4,000 applied to the payment of the installments first becoming due at such decreased rates; so that nothing became due thereon until August 1st, 1869.

4. A supplemental complaint was filed by consent in September, 1870, setting up claims against defendant (1) for moneys recovered and received by him for the value of improvements (largely made by plaintiff) on the lands to which plaintiff's title had failed, and from which defendant was evicted; (2) for moneys paid by the proper owners to redeem said lands from the tax sales under which plaintiff claimed title thereto, which moneys defendant had demanded and received from the county clerk under color of said land contract; (3) for interest accrued in August, 1864, on the $1,000 note then surrendered, which interest (it is alleged) defendant then promised to pay. *Held*,

(1.) That the matters set up in such supplemental complaint are not germane to the relief sought in the original complaint.

(2.) That the suit for a strict foreclosure of the land contract

having been prematurely brought, the action cannot be retained *on plaintiff's demand*, for an *accounting* as to transactions connected with such contract, and set up by supplemental complaint.

(3.) That perhaps, if *defendant* had asked for a final accounting as to all matters growing out of said failure of title as to a part of the lands, and the ejectment suit therefor, and for a determination of the amount, if any, due on said contract, the action might have been retained for that purpose.

(4.) That the mere fact that defendant, denying, by way of defense, that any part of the purchase price remained unpaid, asked for judgment that plaintiff convey to him the remainder of the lands embraced in the contract, will not justify a retaining of the action for an accounting between the parties.

(5.) The fact that such amended and supplemental complaint was filed with defendant's consent, was not a *waiver* of his right to object, by answer or demurrer, that such complaint stated no cause of action.

(6.) An order granting leave to file such complaint, being made upon consent, should not be treated as an *adjudication* binding upon the parties, as to the *sufficiency* of the pleading.

APPEAL from the Circuit Court for *Dane* County.

On the 22d of October, 1863, the plaintiff, *Daniel R. Turner*, and *Josiah Pierce*, one of the defendants, entered into a written contract for the sale and conveyance of lands by the former to the latter. The lands described in said contract are: the S. 1-2 of S. W. 1-4 of Sec. 11; the N. W. 1-4 of Sec. 14; the S. E. 1-4 of N. W. 1-4 and S. W. 1-4 of N. E. 1-4 of Sec. 10; and the N. E. 1-4 of the S. W. 1-4 of Sec. 21 — all in T. 9 N. of R. 9 E.; and also a certain tract described by metes and bounds in the N. E. 1-4 of Sec. 14 in the same town; the whole containing three hundred and thirty-one acres according to the government survey. The consideration for such sale and conveyance is stated to be the sum of $1,000, paid at that time, the receipt of which is acknowledged, and the further sum of $5,600, to be paid with interest as follows: $1,000, with interest on the whole sum unpaid, on the first day of August in each of the years 1865, 1866, 1867, 1868 and 1869; and the remaining $600, with interest thereon, August 1, 1870.

*Turner* covenanted that, upon payment of the two installments becoming due in 1865 and 1866, he would convey to *Pierce*, by warranty deed, the lands above described, giving him a good title free of incumbrance; and he was then to receive a bond for the remainder of the purchase money, secured by a mortgage of the premises so to be conveyed. *Pierce* on his part covenanted to make the payments above mentioned, and to pay all taxes and assessments upon the land until the consideration was fully paid. The contract further states that the payment to become due August 1, 1865, is secured by a note and mortgage of even date with said contract, made by *Pierce;* that *Pierce* is to have possession of the premises on the 24th of October, 1863, and retain possession until default made by him upon his said covenants; that in case of such default, he shall have no claim on *Turner* for the money paid under the contract; and that he may make the payments above named on or *before* the times named, and shall only pay interest to the time of such payment.

Two days after the execution of the contract, it was recorded; and on the same day *Pierce* took possession of the lands therein described, and continued in possession until the time of the trial of the present action, except that he was evicted, in 1868, from the possession of an undivided three-fourths of the N. W. 1-4 of Sec. 14, as hereinafter stated.

This action was brought in March, 1866, for a strict foreclosure of said contract. Afterwards, in August, 1870, by consent of parties, an "amended and supplemental complaint" was filed, and *Pierce* filed an answer thereto. The complaint sets out the contract in full, and avers:

1. That at the time such contract was made, plaintiff held and possessed the two tracts in section 10, therein described, by virtue of two certificates of sale made by the commissioners of school and university lands of this state, held by him in his own right, on which there was due the state only a small amount, and which entitled him, on payment of that amount, to

a patent from the commissioners vesting in him an absolute estate in fee simple in said lands ; that plaintiff was then seized of an absolute estate in fee simple in the lands situate in sections 11 and 21, and the tract in section 14 described by metes and bounds ; and that he claimed in good faith to be the owner of the N. W. 1-4 of section 14, under certain tax deeds duly executed and recorded, and deeds to himself from the grantees named in such tax deeds, and was at the time aforesaid, and for a long time previously had been, in the actual adverse possession thereof, and had made many valuable improvements thereon ; all of which things were well known to *Pierce* when he entered into said contract.

2. That although in said contract plaintiff acknowledged the receipt of $1,000 as actually paid at the time of its execution, yet in fact he received from *Pierce* no money whatever upon said contract at that time, but instead thereof received *Pierce's* note for $1,000, bearing even date with said contract, payable in one year, with interest, and secured by a mortgage on other lands of *Pierce*, in Columbia county.

3. That about the 17th of August, 1864, *Pierce* and the plaintiff agreed upon a modification of said contract, whereby the plaintiff was then presently to convey to *Pierce* the lands in sections 10 and 11, above mentioned, for the price of $4,000 out of the whole price named in the contract for all the land therein mentioned, said $4,000 to be then and there partly paid and partly secured to be paid by *Pierce ;* and the other lands mentioned in the contract were to remain subject to the terms thereof — the remainder of the whole purchase price of $6,600, and interest thereon accumulated, less said $4,000, to remain as the price of said other lands, to be paid according to the contract; that accordingly, on said 17th of August, 1864, the plaintiff executed and delivered to *Pierce* a deed of conveyance of the S. half of the S.W. quarter of section 11, and also assigned and transferred to *Pierce* the two certificates above mentioned for the lands in section 10, it being then agreed that

*Pierce* should assume to pay the state the amount due on said certificates ($182.34), which amount should be treated by plaintiff as a part of the $4,000 aforesaid; that *Pierce* paid plaintiff $2,000 in money, and discharged, at plaintiff's request, an indebtedness of plaintiff which was supposed to be an incumbrance on said lands, to the amount of $647.96, leaving a residue to be paid of said $4,000 amounting to $1,169.70, for which *Pierce* gave his note secured by a mortgage on the lands so conveyed and assigned to him; that thereupon plaintiff surrendered and satisfied the mortgage given by *Pierce* to secure the payment of $1,000 on the 1st of August, 1865, as above stated, and also surrendered to *Pierce* the note of the latter for the $1,000 described in the land contract as paid at the time of the execution thereof, and surrendered and cancelled the mortgage given to secure the same; that there had accumulated interest on said last named note, on said 17th of August, to the amount of $57.35; and that *Pierce*, as a part of the arrangement then made, promised to pay said sum of $57.35, but has never paid it, though often requested, and said sum, with interest thereon, is still due to plaintiff. After some further allegations, not material here, the complaint avers that on said 17th of August, 1864, the whole amount of the purchase price of the lands originally contracted to be sold by plaintiff to defendant, with interest, less the $4,000 aforesaid, was $2,978.58, which was to be paid according to the terms of said contract, with interest payable annually, but that no part thereof, either of principal or interest, has been paid.

4. The amended and supplemental complaint then sets up certain proceedings in an action of ejectment against *Pierce*, commenced in December, 1865, wherein judgment was rendered in June, 1867, adjudging that each one of three plaintiffs in that action was owner of an undivided fourth part of the N. W. quarter of sec. 14; and a subsequent recovery by *Pierce* (in 1868) of a judgment against the plaintiffs in said ejectment suit, for $1,500 for three fourths of the

value of the permanent improvements put upon said land, less the value of the use and occupation between the dates of rendition of said judgments. It alleges, in substance, that of the improvements for which such recovery was had, the greater part, viz., to the value of $1,425, was put upon the premises by the plaintiff; that he, said plaintiff, procured the attendance of witnesses, and employed counsel, at great expense, to try said issue for him in connection with *Pierce*; that the whole of said judgment for $1,500 was however paid to *Pierce*, who had refused to pay over to plaintiff on demand said sum of $1,425, which is plaintiff's just proportion thereof, and the same, with interest, is now justly due to plaintiff. It is further alleged that in December, 1865, the owners of the undivided three-fourths of said N. W. quarter of sec. 14, paid to the clerk of the board of supervisors the sum of $168.34, to redeem their interests from the tax sales upon which plaintiff's claim of title was founded; and that in September, 1868, *Pierce*, without authority from the plaintiff, but under color of said land contract, demanded and received said sum from the clerk of said board, and applied the same to his own use, and has since refused to pay the same to plaintiff on demand. There are also like averments as to one or two other small amounts paid as taxes on said N. W. quarter of sec. 14, and which plaintiff claims to recover from *Pierce.*

The relief demanded is, that the said several sums due plaintiff upon said land contract, or collected and received by *Pierce* under color thereof, as aforesaid, may be adjudged to plaintiff, with interest; that all the right and title of defendants, etc., may be foreclosed in the one undivided fourth of said N. W. quarter of sec. 14, and in the parcel in the N. E. quarter of said section, and in the land in section 21; that said lands may be sold to pay the amount thus found to be due plaintiff, etc.; and that *Pierce* may be adjudged to pay any deficiency.

*Pierce's* answer denies that anything is due the plaintiff on said contract, and alleges that on the 19th of August, 1864, he

paid plaintiff *on said contract* $4,000, and took his receipt, which is set out in *hæc verba*, and is in the form " Received of *Josiah Pierce* four thousand dollars *to apply on land contract* between him and me," [describing it.] The answer further denies that at the time such payment was made, or at any other time, any new contract was made, or any modification of the old one, but avers that at the time mentioned plaintiff could not give a deed of the N. W. quarter of sec. 14, because he had not title thereto in fee simple, and therefore defendant would not take a deed of the whole of the lands mentioned in the contract, and give a mortgage back, as it was stipulated in said contract he might do; that at that time there was only $1,000 due plaintiff, and nothing would be due on said contract until August 1, 1865; and that by the payment of the $4,000 at that time defendant anticipated the payment to become due on the first of August in 1865, 1866 and 1867. In reference to the ejectment suit against *Pierce*, mentioned in the complaint, the answer avers that the plaintiffs in that action recovered judgment against said *Pierce* for $979.55, damages for use and occupation of the premises there in dispute, and $89.60 costs, which was set off against the subsequent judgment for improvements mentioned in the complaint; and that said ejectment suit was defended by *Pierce*, at the request of the present plaintiff, at an expense of $1,000, which is properly chargeable to the present plaintiff. The allegation that plaintiff made the greater part of the improvements for which recovery was had is denied ; and it is further alleged that the purchase price of the land, as agreed upon in said contract, was about $20 per acre ; that the 120 acres in the N. W. quarter of sec. 14, as to which plaintiff's title had failed, was worth as much as any other portion of said lands; and that defendant is not indebted to plaintiff in any sum whatever. Prayer, that plaintiff be adjudged to convey to said defendant the undivided one-fourth of the N. W. quarter of sec. 14, and the land in sec. 21, described in the complaint, and that defendant have judgment for costs.

The trial took place at the April term of said court, 1871. Defendant objected to the admission of any evidence under the complaint, on the ground that it did not state a cause of action; and after plaintiff's evidence was in, moved for a nonsuit. The objection was overruled and the motion denied. The evidence was voluminous, and will be omitted. The court found, *inter alia,* 1. That the deed of the S. 1-2 of S. W. 1-4 of sec. 11, executed by plaintiff to defendant in August, 1864, acknowledged the receipt of $2,000 as the consideration thereof; that the $4,000 then paid and agreed and secured to be paid for the 160 acres of land in sections 10 and 11, then conveyed by deed and the assignment of school land certificates, was the value of said land relatively to the whole land described in the contract, and the whole consideration therein expressed, and the remaining sum of $2,600 was the relative value of the residue of said land, and this was so regarded by the parties at the time, and they both regarded said contract as continuing between them subject only to such motifications as the transactions then had between them would necessarily make; that the receipt set forth in the answer was then executed as a part of the transaction; and that a proper construction of the instruments then executed (deed, assignment, mortgage and receipt), taken in connection with the surrounding facts, was, " to eliminate the land thus conveyed, and the consideration therefor, from said contract, leaving it in other respects unmodified, and in force according to its terms, for the balance of said land and the remaining consideration therefor." 2. That the title to an undivided three-fourths of the N. W. 1-4 of sec. 14, had failed, leaving subject to the contract the remaining undivided fourth part of said quarter section, and ten acres in sec. 21; that the value of said undivided one-fourth and of said ten acres, on the basis of the contract, was $767.30; that plaintiff was entitled to interest on that sum from the date of the contract, amounting to $404.07; that from the aggregate of these two sums defendant was entitled to deduct the taxed costs and other expenses paid by him in the

ejectment suit and interest thereon since the rendition of the judgment in that suit (making an aggregate of $494.90); and that for the balance thus found due plaintiff on the contract ($676.74) he was entitled to a strict foreclosure thereof. 3. That plaintiff was also entitled to recover from defendant $57.55 of interest due on the $1,000 note surrendered in 1864, with interest on that sum from that date; the sum of $1,346.25 for three-fourths of the value of improvements put by him on the N.W. 1-4 of sec. 14 (for which defendant recovered judgment in the ejectment suit), with interest thereon; and the sum of $186.60, redemption money demanded and received by defendant as alleged in the complaint, with interest; that from the aggregate of these items defendant was entitled to deduct $200 paid by him as expenses in the suit for the value of said improvements, with interest; and that plaintiff was entitled to a personal judgment against *Pierce* for the balance, to wit, the sum of $1,611.64. The court held, further, that the two causes of action so found, one legal and the other equitable, were properly joined, or, if not, that the objection was waived by a failure to demur to the complaint for a misjoinder.

Judgment of strict foreclosure of said land contract in case said sum of $676.74 should not be paid within three months; and a personal judgment against *Pierce* for said sum of $1,611.64, etc., in accordance with said finding. The defendant *Pierce* filed exceptions to the finding, and appealed from the judgment.

*Smith & Lamb*, for appellant, argued, among other things, that payments made on a contract, if not especially applied by the parties, are applied by the law itself to the payment of installments first falling due (*Robbins v. Lincoln*, 12 Wis., 1; Broom's Leg. Max., 512 [638] ); that the action on the contract was prematurely brought, and judgment should have been for the defendant (*Cheatham v. Lewis*, 3 Johns., 42; *Roud v. Griffiths*, 11 Pick., 130; *Ilsley v. Jewett*, 2 Met., 168; *Swift v. Crocker*, 21 Pick., 241); that no part of the claims for which a personal judgment was rendered existed at the commencement of

the action, unless it was the claim for $57 interest on the first installment of $1,000; that the court could have adjusted this matter in applying the $4,000 on the contract, especially as Pierce paid more interest at the time than was due, having paid on the 120 acres that were lost; and that this could have been done more appropriately than by adding a new and incongruous cause of action by supplemental complaint. *Slawson v. Englehart*, 34 Barb., 198; *Wattson v. Thibou*, 17 Abb. Pr. R., 184; *McCullough v. Colby*, 5 Bosw., 477; *Hoffman v. Hoffman*, 35 How. Pr. R., 384; *Robbins v. Wells*, 26 id., 15.

*Wm. F. Vilas*, for respondent, argued that the contract was "modified" by the conveyance of a part of the land instead of and before the whole, and the payment of a part of the price before it was due; that the deed was an instrument of a higher nature, and, so far as it extended upon the contract, superseded it (*Smith v. Higbee*, 12 Vt., 113; *Creigh v. Beelin*, 1 W. & S., 83; *Cronister v. Cronister*, id., 442; *Haggerty v. Fagan*, 2 Penn., 533); that as to the land conveyed and the consideration therefor, the conveyance was a part performance, necessarily modifying the contract (*Selden v. Williams*, 9 Watts, 9); and that the parties, by this transaction, made a designation of $4,000 as the price of the 160 acres in sections ten and eleven, and $2,600 as the price of the residue, the contract in other respects remaining unchanged. They further contended that the findings of fact and conclusions of law of the court below contained nothing to which the appellant could object.

Cole, J. We think the evidence in this case most clearly and conclusively shows that the action was prematurely brought. It was commenced on the 5th of March, 1866, to foreclose the contract, because the defendant was in default for not making payment according to its stipulations. And it is very plain to us that nothing at this time was due upon it. For, putting out of view for the moment what subsequently occurred, showing that the plaintiff had no title to three fourths of the

land in section fourteen which he assumed to sell, it is admitted that the note and mortgage given by the defendant on the Columbia county lands was treated as the payment of the $1,000 which was to be made on the execution of the contract. The next payment, of $1,000 and interest on the unpaid purchase money, fell due the 1st of August, 1865. The subsequent payments were to be made, of $1,000 on the first days of August, 1866, 1867, 1868 and 1869, and the last, of $600, on the 1st of August, 1870, with interest at each annual payment on all unpaid purchase money. On the 17th of August, 1864, occurred the transactions which seem to have confused the case. According to our understanding of the arrangement then made between the parties, it was simply this. The plaintiff surrendered and delivered up to the defendant the $1,000 note and mortgage on the Columbia county lands, and discharged that mortgage. He also conveyed by deed the eighty in section eleven, and assigned the school land certificates of the two forty-acre tracts in section ten. And the defendant then paid, in money, by note and mortgage, and by discharging the amount due the state on the school land certificates, the sum of $4,000, on the contract. With the exception of thus anticipating the payments before they became due, we do not think the evidence shows any other modification or change in the contract. This being so, it is very apparent that there was nothing due the plaintiff on the contract when the action was commenced.

If we should look into the history of the transactions a little further, the plaintiff's action would appear to have been still more premature. The title to one hundred and twenty acres in section fourteen failed. The circuit court found the value of that one hundred and twenty acres to be $1,832.68. Deducting this amount from the contract price of the land mentioned in the agreement, which was $6,600, it leaves $4,767.32 for the land which the plaintiff could give a title to. As the entire contract price is thus decreased, the installments due from year to year would be correspondingly diminished. The

installments of $1,000 would each be proportionately reduced, and would amount to about $722 each, and the last one to about $433. So that upon this basis there would be unpaid on the contract, principal and interest, on the 17th day of August, 1864, about $5,043. And the $4,000 then paid would discharge all installments up to the one due August 1, 1869, and some portion of that even.

Whatever view, therefore, is taken of the matter, it is very manifest that the defendant was not in default in making payments on the contract when the suit was commenced, and consequently that the plaintiff was not entitled to a foreclosure of the contract. The circuit court, however, adopted the theory that the $4,000 which was paid August 17, 1864, was intended to be, and in fact was, a payment for the one hundred and sixty acres on that day conveyed by the deed and the assignment of the school land certificates, and was agreed upon as the consideration for those tracts; this being the relative value of the land so conveyed as compared with the whole land described in the contract. In other words, the court states substantially, in its finding, that the object and legal effect of the transactions which took place on the 17th of August, 1864, were, "to eliminate the land thus conveyed and the consideration therefor from the contract, leaving it in other respects unmodified and in force according to its terms for the balance of the land and the remaining consideration." We do not think the evidence supports this conclusion. For it is apparent that according to this view the $4,000 was apportioned by the parties to the payment of the one hundred and sixty acres in sections ten and eleven, and was not intended to be applied generally on the contract. This, of course, would leave a proportionate amount of each installment unpaid and unprovided for. But, as already remarked, to our minds the evidence establishes the fact beyond doubt, that the $4,000 was intended to be and in fact was paid generally on the contract, without any application other than such as the law would make. Mr. George B.

Smith, who transacted the business chiefly, states in his testimony most explicitly, that he understood from the parties that the $4,000 was paid generally on the contract, to anticipate the payments not due; and he is fully sustained in this statement by the receipt which was given at the time. That receipt expressly says that the $4,000 was "to apply on the land contract," a form of expression which would not have been used if the real understanding was that this sum was paid and received as the purchase money agreed upon for the lands in sections ten and eleven described in the contract. Indeed, we regard the proof entirely conclusive upon the point that no such arrangement was made, and that there was no apportionment of this $4,000 to the payment of any particular land. This being so, that amount being paid generally on the contract, the law would apply it to discharge the payments or installments first becoming due. In any event there is no ground for saying that the defendant was in any default when this suit was instituted.

A supplemental complaint was filed in the action September 7, 1870, to which the defendant answered. This sets up claims against the defendant accruing after the commencement of the suit, for which a personal judgment was given. These supplemental matters are not germane to the relief sought in the original complaint, are not in aid of that relief, but constitute distinct causes of action which can be more appropriately adjusted by themselves. We shall not go into that branch of the case; for it seems to us, if we are right in the views already expressed, the action must be dismissed. For clearly the plaintiff was not entitled to a foreclosure of the contract when this action was commenced. We do not, then, see upon what principle the cause can be retained for a final accounting between the parties. True, the defendant asks that the plaintiff convey the undivided fourth of the tract in section fourteen, and the ten acres in section twenty-one. But this relief is asked rather as a defense than as a counterclaim. Had the defendant asked

for a final accounting of all matters growing out of the eject-
ment suit and failure of title, and a determination of the
amount, if any, due upon the contract, the suit might be
retained for that purpose. As it is, we do not well see how
any other course can be adopted than to order the action dis-
missed. We regret this result, since there were some special
circumstances suggested on the argument which render it ex-
ceedingly desirable that all matters in controversy between
these parties should be brought to a speedy termination.

We think the judgment of the circuit court must be reversed,
and the cause be remanded with directions to dismiss the action.

*By the Court.*— So ordered.

On a motion for a rehearing, the respondent's counsel called
the attention of the court to the fact that the order permitting
the filing of the " amended and supplemental complaint," in
1870, was made upon the written consent of defendant's coun-
sel; and he argued, 1. That it is entirely competent, and the
correct practice, under the present system, for the court, upon the
*motion* to admit a supplemental complaint, *to adjudicate* whether
it presents a cause of action matured since the suit began, and
to reject the proffered pleading on that ground, or to admit it.
2 Tay. Stats., 1447, sec. 45 ; *Lampson v. McQueen*, 15 How. Pr.
R., 345 ; *McCullough v. Colby*, 4 Bosw., 603 ; *Penman v. Slocum*,
41 N. Y., 53 ; *Wattson v. Thibou*, 17 Abb. Pr. R., 184; *Orton v.
Noonan*, 29 Wis., 541. 2. That a favorable decision upon
such a motion is an adjudication of the right to have the mat-
ters admitted in the supplemental complaint tried in the cause,
just as an order permitting a proposed amendment is an adju-
dication that the matter received does not so substantially
change the nature of the action or defense as not to be triable
in the suit; that after such an adjudication the court would
not permit the question to be raised anew by answer or on the
trial, but the decision, not being excepted to or appealed from,
remains binding in the cause. 3. That in matters of practice a

party will not be heard to object, at a late stage of the proceedings, upon technical reasons which might properly have been urged at the threshold to the order on which the proceedings are based, of the hearing of which he had due notice; and this is so *a fortiori* of an order made in pursuance of his written consent, and in a case which has thereupon been laboriously tried upon the merits, and a just judgment rendered therein. *Penman v. Slocum, supra; Cogswell v. Colley,* 22 Wis., 399; *Vail v. Remsen,* 7 Paige, 206; *Ubsdell v. Root,* 3 Abb. Pr. R., 142; *Pulling v. Columbia Co.,* 3 Wis., 337; *Leonard v. Rogan,* 20 id., 540. 4. Counsel further argued that in any view of the effect of the transactions of 17th August, 1864, upon the contract, there was due on the 1st of August, 1865 (before the commencement of this action), at least the *interest* upon all the sums then unpaid, and the default in paying such interest was a sufficient cause of action.

The motion for a rehearing was denied, and the following opinion filed, at the June term, 1872.

COLE, J. On the motion for a rehearing the counsel for the plaintiff insists that the defendant has waived the objection that the action was prematurely brought, and that he ought not to be permitted now to make it. The facts upon which he chiefly relies to show a waiver, are the following: On the 11th of August, 1870, the plaintiff, by his attorney, gave notice of a motion to be heard on the 19th of that month, at the court room in Janesville, for an order granting leave to file an amended and supplemental complaint served with the notice of the motion. The defendant's counsel, a few days thereafter, consented in writing that an order might be made amending the complaint as proposed in the motion, and that the venue be changed to Dane county. The circuit court for Rock county subsequently, on the motion thus noticed, and this written consent, ordered that the supplemental and amended complaint served with the notice be filed as the plaintiff's complaint in the action, and

that the defendant answer the same within twenty days from the service of a copy thereof. Upon this being done, the counsel entered into a stipulation, in substance, that the defendant *Pierce* should have twenty days to answer, and that the place of trial of the issues joined and to be joined in the action be changed to Dane county, each party waiving any and every objection which he might have otherwise taken to such change of venue, or the jurisdiction of the circuit court for Dane county in consequence of such change. An answer was afterwards filed to the amended complaint, in which, among other things, it is stated and averred, that, from the matter set forth in the complaint itself it appeared that there was nothing due on the contract when the suit was commenced. These are the facts upon which the plaintiff mainly relies to show a waiver of the objection that the action was prematurely brought. And the question is, Do they show any waiver? We think not. True, the attorney of the defendant consented in writing that the court might make an order allowing the plaintiff to file his amended and supplemental complaint. But it is obvious that he did not thereby waive the right to take any legal objection which might exist to such amended complaint when filed ; and it would be most unreasonable to give the stipulation any such construction. Did he waive his right to insist, either by answer or demurrer, that the complaint was insufficient and stated no cause of action? Certainly not. It is said that he ought then to have taken the objection that the suit was prematurely brought. This is precisely the objection he did take, and which he had the right to insist upon in his answer. He there stated that from the facts set forth in the complaint it appeared there was nothing due on the contract at the commencement of the action. Again, it is said that the circuit court, in granting leave to file the supplemental complaint, determined its sufficiency, and decided that the matters therein contained were proper causes of action, and this order, not having been appealed from, is *res adjudicata.* In this case leave to file the supplemental com-

plaint was granted as a matter of course, the defendant having consented that such an order might be entered. But the legal effect of the order, granting leave, ought not to be held as a bind-- ing adjudication upon the parties as to the sufficiency of the supplemental complaint. All that such an order fairly decides is, that the court allows the supplemental complaint to be filed, leaving the question of its sufficiency to be determined in the usual way. Beyond this the order did not attempt to adjudi· cate.

We do not deem it necessary to add anything further in an- swer to the argument made in support of the motion for a re- hearing.

. *By the Court.*— Motion denied.