SAMUEL H. STEPHENS *vs.* RUSSELL C. C. DUBOIS *et al.*

JULY 9, 1910,

PRESENT:  Blodgett, Johnson, Parkhurst, and Sweetland,  JJ.

(1)  *Attorney and Client.  Purchasing Property in Litigation.*

While an attorney was engaged in enforcing the claim of a client as a creditor of an estate, the attorney purchased the residuary interests in such estate:—

*Held*, that an attorney would not be permitted to so acquire an interest adverse to his client.

*Held*, further, that client was entitled to a decree that the property was held in trust for him, and to a conveyance of same on payment of the purchase price with interest.

(2)  *Laches.  Acquiescence.*

*Held*, further, that the dismissal of the bill, by the Superior Court, on the

ground that complainant was guilty of laches by reason of delay to institute proceedings for sixteen months, was error.

Laches in legal significance is not mere delay but delay that works a disadvantage to another.

A party who is entitled to set a transaction aside can not be charged with delay, or acquiescence, unless there has been full knowledge of all the facts and perfect freedom of action.

BILL IN EQUITY to establish a trust. Heard on appeal of complainant, and sustained.

BLODGETT, J.  This is a bill in equity brought against former counsel of the complainant to establish a trust in a purchase of the residuum of an estate of which the complainant was then a creditor, and against which estate he then had an action pending for the collection of his claim in which the respondent Henry J. Dubois was his counsel, who took a deed to the same in the name of his son, Russell C. C. Dubois, the other respondent.

After hearing on bill and answer, there being no replication, the following rescript was filed:

"TANNER, P. J.  This is a bill in equity and was heard upon bill and answer.

"We think it is clear that the respondents bought and hold the property involved as trustee to the complainant. We think, however, it is equally true that the complainant has slept upon his rights. He has waited for at least 16 months before claiming his rights under the trust. The case being heard upon bill and answer, the bill must be viewed in the light of the respondents' denials. Thus viewed, the complainant alleges no excuse for his failure to act sooner, and a delay for at least 16 months, in view of the complainant's refusal to purchase the estate when it was bought by the respondents, and in view of his statement that he would have nothing to do with it, must be considered an unreasonable length of time.

"We hold, therefore, that the complainant is estopped to assert his rights, and the bill is dismissed."

The material allegations of the bill are as follows:

The complainant, having been given a large amount of personal property by one Mary T. Merriss just prior to her decease,

engaged one of the respondents, Henry J. Dubois, to defend him in a suit brought by the administrator on the estate of said Mary T. Merriss against him for the purpose of recovering said personal estate and having said gift set aside. This complainant also had a claim against said estate for professional services rendered by him to said deceased, and also a claim on a promissory note made by said deceased to him for the sum of $5,000.00.

Said Henry J. Dubois was also engaged to prosecute this claim for him against said estate. It is also alleged that, while said litigation was pending, this complainant, through his said attorney, entered into negotiations with the residuary legatees named in the will of said Mary T. Merriss with a view of purchasing said interests, it being considered for the benefit of the complainant to purchase the same in view of his litigation with said estate; that the said Henry J. Dubois then had money belonging to this complainant in his hands and was directed by the complainant to make such purchase for him, and that said Dubois afterwards requested this complainant to assign to him all his claim against said estate, and said interests, to hold as collateral security therefor. That said Dubois did purchase said residuary interests and had them assigned to his son Russell C. C. Dubois, who now holds the same for his father, said Russell never having advanced any money in payment of the same, That in November 1908, in the trial of an action at law brought by said Henry J. Dubois against the complainant for legal services, he learned that said transfer had been made to said Russell C. C. Dubois. That afterwards this bill was filed by the complainant for the purpose of having said Russell declared to hold said residuary interests for the benefit of this complainant, he paying whatever sum said Henry J Dubois may have advanced for the purposes of paying for the same.

So much only of the answer of the respondent Henry J. Dubois as is material to the purposes of this inquiry is here given: "2nd. He admits the allegations in par. 2, of said bill to be true." Paragraph 2 of the bill thus admitted is

as follows: "2. That at the time this complainant consulted one Henry J. Dubois, an attorney and counsellor at law of this court, in relation to the same, he then being and having been for a long time prior thereto his attorney in other suits then pending in this court, and he secured the services of said Dubois in relation to said gift and other matters incident thereto and connected therewith and also for the purpose of representing him and defending his interests in suit brought by said administrator to have said gift set aside."

In paragraphs 7, 8, and 9 of the answer, the respondent Henry J. Dubois states his contention relative to the matter here in issue:

"7th. He denies the truth of the allegations in par. 7, of said bill and avers that this defendant suggested to the complainant that he said complainant, purchase the interests of the residuary legatees and devisees under said will; that the complainant said that he had no money with which to purchase the same; that this defendant was to procure the necessary money for such purchase, to loan to the said complainant and was to receive security from said complainant for such loan; that this defendant entered into negotiations with such residuary legatees and devisees for the purchase of said residuary estate for the complainant and for the conveyance to him of the same; that deeds and assignments of such residuary estates were drawn by this defendant conveying the same to this complainant; that after agreement with said residuary legatees and devisees had been made by this defendant and the price agreed upon for the conveyance of such residuary estate to this complainant, this defendant drew an assignment from said complainant to this defendant, of a certain verdict for the sum of $650, which said complainant had obtained against the estate of said Mary T. Merriss, and also of a certain promissory note for the sum of $5,000, to be held by this defendant as security for the sum of $650, to be loaned by this defendant to this complainant for the purchase of such residuary estates; that the said complainant refused to execute said assignment or to give any security for the money so to be loaned as aforesaid by this

defendant, and absolutely refused to proceed with the purchase of said residuary estates and told this defendant that he would not purchase said residuary estates, that he would have nothing further to do with the matter.

" 8th. He denies that he ever drew, or requested the complainant to execute such an assignment as is alleged in par. 7 of said bill. He admits that after the refusal of the complainant to purchase said residuary estates, this defendant entered into negotiations with such residuary legatees and devisees for the purchase of said residuary estates for his son Russell C. C. Dubois one of the defendants, and did purchase the same for him for the sum of $676, and the same were conveyed to said Russell C. C. Dubois by the said residuary legatees and devisees, and are now held by the said Russell C. C. Dubois. He denies that such purchase was completed immediately after the refusal of the said complainant to purchase the same and avers that such conveyance was made to the said Russell C. C. Dubois on September 6th, 1906. He admits that such conveyance was made without the knowledge or consent of this complainant and avers that said complainant was afterwards notified of the same.

" 9th. He denies the truth of the allegations in par. 9 of said bill except so far as the same are above admitted, and as follows:—He admits that he advanced the money for the said purchase of said residuary estates for the said Russell C. C. Dubois and that the said Russell C. C. Dubois is his son."

The respondent Russell C. C. Dubois makes these admissions in paragraphs 7 and 9 of his answer: " 7. On information and belief he denies the allegations contained in par. 9 of said bill, except as follows—That the transfer mentioned was made to this defendant; that said Henry J. Dubois used his own money for the purchase of said residuary estates; that he is the son of said Henry J. Dubois and that the said Henry J. Dubois negotiated the purchase of said residuary estate for this defendant." . . . " 9. He admits that the complainant requested him to convey said residuary estate to him and that he refused so to do. He denies that said complainant offered

to pay therefor the sum paid for the same with costs and expenses."

Both respondents deny any wrong or damage or injury to the complainant, and that they knew the value of the residuum so purchased.

(1)    The first question thus presented is as to the propriety of the purchase of the residuary share in an estate by an attorney whose client is then engaged in litigation to enforce his claims as creditor of that estate.   Upon this point there can be but one opinion.   The attorney can not thus be permitted to acquire an interest adverse to his client.   By as much as the client succeeds in establishing his claim against the estate, by exactly that amount is the value of the residuary interest so purchased by his attorney diminished.   He is in effect suing himself while acting, as attorney for his client, and can not thus occupy the inconsistent positions of defendant and attorney for the plaintiff, inasmuch as no man can thus serve two masters.

Thus in *Henry* v. *Raiman*, 25 Pa. St., 354, 359, it is said by Lewis, C. J.: "Where fidelity is required the law prohibits everything which presents temptation to betray the trust. The orison which deprecates temptation is the offspring of infinite wisdom, and the rule of law in accordance with it rests upon the most substantial foundations.   The purchase by an attorney of an interest in the thing in controversy, in opposition to the title of his client, is forbidden, because it places him under temptation to be unfaithful to his trust.   Such a purchase, therefore, enures to the benefit of his client."

In *Case* v. *Carroll*, 35 N. Y. 385, 388, the court of appeals of New York held: "It is a settled principle of equity, that no person, who is placed in a situation of trust or confidence in reference to the subject of the sale, can be a purchaser of the property on his own account.   And this principle is not confined to a particular class of persons, such as guardian, trustees or solicitors, but is a rule of universal application to all persons coming within its principle; which is, that no party can be permitted to purchase an interest where he has a duty to perform inconsistent with the character of a purchaser.   (*Torrey* v. *Bank of*

*Orleans*, 9 Paige, 650, and cases there cited.)   In *Cumberland Coal Co.* v. *Sherman*, (30 Barb. 553) this principle was applied to the case of a mere agency.   It is not necessary for a party seeking to avoid a contract on this ground to show that an improper advantage has been gained over him.   It is at his option to repudiate or to affirm the contract, irrespective of any proof of actual fraud.   (Denio, J., in *N. Y. Central Ins. Co.* v. *National Protection Insurance Co.* 14 N. Y. 91.)   So an agent who discovers a defect in the title of his principal to lands cannot misuse it to acquire a title for himself, but will be held a trustee for his principal.   (Story on Agency, § 211.)"

So in *Harper* v. *Perry*, 28 Ia. 57, it is said (pp. 60, 61):   "II. The rules of law governing the transactions of an attorney with his client are most strict, and operate to protect the client from any advantage that may be possessed by the attorney on account of superior knowledge or confidence reposed in him by the client.   What the law does not consider unfair dealing between other parties, where no fiduciary relation exists, will frequently not be sustained as between attorney and client. While the relation exists, an attorney is not permitted to take advantage of the client's affairs, against his interest, to make money.   The hardship of the doctrine, in its application to particular cases, is not so much regarded as the public mischief which would grow out of rules permitting the attorney to take advantage of his position and knowledge and the confidence of his client, in order to make advantageous transactions for himself.   No rule, in its application, has a more beneficial effect upon the pecuniary interests, or more effectually promotes the dignity, of the legal profession.   It is the source of the utmost confidence in the attorney, and secures to the client services meriting the most generous rewards.   Its strict enforcement is necessary for the proper protection of the client. And courts will not refrain from its application because the wrong to the client may not be fully apparent in extent, nor the influence under which it was wrought entirely understood.

"The application of this rule forbids the attorney to purchase, against the interest of his client, property sold in the

course of litigation, in which he is retained, and such sales will be held void, or the attorney will be held as the trustee of his client, and required to account as such," citing cases.

In *Rogers* v. *R. E. Lee Mining Co.*, and others, 9 Fed. Rep. 721, it was held by McCrary, circuit judge: "It is not necessary to decide the question whether an attorney at law can, under any circumstances, purchase *pendente lite* from his client, the subject-matter of a litigation in which he is employed and acting.

"Equity will not uphold such a sale, even upon a showing of good faith, where it appears, as in this case, that the attorney while negotiating for the purchase of the property, was at the same time, and as part of the negotiation, advising the client as to the probable outcome of the litigation concerning it. It is difficult to see how it is possible for an attorney, under such circumstances, to deal with his client at arms-length; for the client's acceptance or rejection of any proposition for a purchase by the attorney, must depend upon the nature of the advice he receives from him touching the pending litigation. In other words, the attorney must, as to an unimportant part of the negotiation, represent both sides; that is, his own private interest, and the opposing interest of his client,—a thing which is manifestly contrary to law and abhorrent to equity. The client must in such a case act upon the attorney's advice and opinion as to the merits of the pending litigation about the property, and by the light of such advice he must fix the price at which he will sell. Even if under some circumstances the property in controversy in a suit may, pending the suit, be sold by the client to the attorney, I am of the opinion that a court of equity ought to hold that such a sale is absolutely void, if the attorney, while negotiating as a purchaser, is called upon to advise the client, as an attorney, as to how far a pending litigation is likely to affect his title to the property, or the value of his interest therein."

So in *Rogers* v. *Marshall*, 13 Fed. Rep. 59, 61, it is said: "The questions of law presented by a litigation in which the attorney has been employed are matters within his peculiar

knowledge; he deals with them as an expert; they are frequently questions of a technical, and always a professional, character. They are often questions which go to the very root and marrow of the inquiry which the seller must make in determining the price at which he will sell. This is well illustrated by the present case, since it appears that Marshall, the attorney, was defending for the complainant and others certain suits involving the validity of her title, and which, if decided adversely to her, would have destroyed every vestige of her property in the mine. It follows, therefore, that to decide the question whether these suits were well grounded, or whether there was danger of a decision therein adverse to complainant, was to decide upon the question of the value of complainant's interest. To allow Marshall to advise her or her agent upon this question was to enable him to influence materially the fixing of the value of the property while negotiating for its purchase. The law will not permit an attorney to deal with his client in this way. Such dealing is manifestly against the policy of the law—as much so as a purchase by a guardian from his ward, or that of a trustee from his *cestui que trust.* Such transactions are not held to be void upon the ground of intentional fraud, or proven bad faith, but because the relations of the parties are such that the one may make use of his position of power and influence over the other, or of his superior knowledge derived while in the employment of the other, to take an unfair advantage of him. The law, upon grounds of high public policy, seeks to destroy the temptation to abuse such opportunities, and therefore does not inquire whether the transaction was fraudulent or not. In such a case the attorney, by continuing to advise the client about the pending litigation, while at the same time negotiating for the purchase of the property in controversy in such litigation, confounds his position as attorney with that of purchaser, and however honest he may be, the purchase is not permitted in any case." And see *Gooch* v. *Peebles*, 105 No. Car. 411.

At the time of the purchase of this residuary estate by the respondent, for $676, it appears by the answer that the complainant then held a note for $5,000, and had obtained a ver-

dict for $650 against the estate, and that the respondent was his counsel in that litigation. It is also undisputed that, upon a new trial being granted in the suit in which the verdict was obtained, in which second trial the respondent was still acting as attorney for the complainant, a verdict was rendered, in said second trial, against the complainant, which has now become a judgment, precluding the complainant from recovering from said estate on said note of $5,000, or on the claim for services upon which, on the first trial, and at the time of the purchase by the respondent, the verdict for $650 in his favor had been returned. It is indubitable that the value of the residuary estate so purchased by the respondent has now been increased thereby to the benefit of the respondents, and in proportion thereto, inasmuch as there is no claim that said estate was or is insolvent. Even if $676 so paid by the respondent was a fair price for the residuary interest, with the litigation as it stood at the close of the first trial and at the time of his purchase, we are asked by the respondent to hold that, in view of the result of the litigation, he may thus profit at the expense of the client whose cause had been committed to his care. In *Hall* v. *Hallet*, I Cox Cas. 134, 140, the rule was thus expressed by Lord Chancellor Thurlow, that "no attorney can be permitted to buy in things in a course of litigation, of which litigation he has the management. This the policy of justice will not endure." In this case the purchase appears to have been made by the attorney in 1758, and the bill was filed in 1766.

(2)    In the opinion of the Superior Court, the complainant was held to be guilty of laches by reason of his delay to institute proceedings for sixteen months. It will be observed that in paragraph 8 of the respondent's answer, *supra*, his statement does not specify the time when the complainant knew of said purchase, the language being as follows: "He admits that such conveyance was made without the knowledge or consent of this complainant and avers that said complainant was afterwards notified of the same." Even if we consider the defence of laches available when not pleaded, or when facts are not pleaded which show laches, and even if it be admitted that the

delay on the part of the complainant was as long as the trial justice, hearing the case only on bill and answer and without proofs, has found it to be, we are nevertheless of the opinion that is was error to dismiss the bill.

It does not appear that the delay has in any way prejudiced the respondents, and this court has said, in *Chase* v. *Chase*, 20 R. I. 202, 203, 206: "Laches, in legal significance, is not mere delay, but delay that works a disadvantage to another. So long as parties are in the same condition, it matters little whether one presses a right promptly or slowly, within limits allowed by law; but when, knowing his rights, he takes no steps to enforce them until the condition of the other party has, in good faith, become so changed that he cannot be restored to his former state, if the right be then enforced, delay becomes inequitable and operates as an estoppel against the assertion of the right. The disadvantage may come from loss of evidence, change of title, intervention of equities and other causes, but when a court sees negligence on one side and injury therefrom on the other, it is a ground for denial of relief.    ·    ·    · Second, that *mere* lapse of time within the statutory limits does not constitute laches. To this we agree, as we have already stated."

And there is a further consideration set forth in *Elmore* v. *Johnson*, 143 Ill. 513, 534: "But the party, who is entitled to set the transaction aside cannot be charged with delay, or with acquiescence, or confirmation, unless there has been full knowledge of all the facts, and perfect freedom of action. Acts, which might appear to be acts of acquiescence, will not be held to be such, if the client or *cestui que trust* is ignorant of the circumstances, or under the control of the original influence, or otherwise so situated as not to be free to enforce his rights," citing cases.

In *Atkins* v. *Delmege*, 12 Irish Eq. Rep. 1, the syllabus is as follows: "The solicitor for X. who was plaintiff in a suit to raise a charge on certain lands, purchased, in the name of a trustee, the lands, at a sale under the decree, which was con-

ducted by him in a manner that showed either great negligence or a design to depreciate the property, and the proceeds of which were insufficient to discharge his demand for costs, without paying anything to X:—The sale was declared void in a bill filed by X. sixteen years afterwards, without any proof of its being at an undervalue." And the Lord Chancellor observed (p. 15): "In some of the cases where no actual deception or concealment was proved, many years, ten or eleven, elapsed. In this the time has been but sixteen years, which is less than that in *Gregory* v. *Gregory* (Coop. 201, eighteen years), or *Champion* v. *Rigby* (1 Russ. & M. 539, eighteen years); and in these cases no evidence of fraud, misrepresentation or circumvention appeared, but the question turned on the effect of length of time on a purchase only impeachable on an equity arising out of the transaction itself. Here, therefore, where I have evidence, and strong evidence, of that character, at least of misconduct and misrepresentation as between Mr. Delmege and the court, I cannot think that he is entitled to reply on the lapse of time which has occurred. I do not absolutely assent to, though I am far from saying that I dissent from, the proposition put by Mr. Christian, that in truth in such a case as this, where a disability amounting almost to incapacity to purchase exists, the party cannot be protected within a shorter limit than that of twenty years fixed by the statute of limitations. I am not inclined to fix any bounds to the power of the court to do justice to the parties who have reason to complain of a sale such as this, and I will not on this occasion either say that the court is to be bound by a shorter period than twenty years, nor that similar cases may not occur which would call for its interposition at a much longer interval. I will say nothing that could be quoted as my opinion that, under any circumstances or after any length of time, a sale such as complained of in the present case could be supported."

We are of the opinion that the complainant is entitled to a decree that the property in question is held in trust for him, and that he is entitled to a conveyance of the same upon payment

of the purchase price thereof, and interest thereon, within sixty days after entry of such decree.

A decree may be presented for entry accordingly.

*Samuel H. Stephens, pro se ipso.*

*Irving Champlin,* for defendants.