McILROY BANKING COMPANY *v.* DICKSON.

Opinion delivered April 8, 1899.

1. ADMINISTRATION—AUTHENTICATION OF CLAIMS.—Claims against estates of deceased persons, capable of being asserted either in a court of law or equity, must be authenticated by affidavits of the claimants to the effect that the claims are just, and have not been paid, in whole or in part, as the case may be. (Page 330.)

2. SAME.—The general rule that claims against estates of deceased persons must be authenticated by affidavit of the claimant applies to a claim arising out of an alleged breach of trust or for the amount of a defalcation by a bank cashier. (Page 330.)

3. SAME—AUTHENTICATION OF SECURED CLAIMS.—The claim of a corporation against the estate of a deceased shareholder need not be authenticated, to entitle the corporation to enforce its statutory lien on his stock for the amount of his indebtedness. (Page 331.)

4. HOMESTEAD—TRUST DEBT.—Money borrowed of a bank by its cashier by means of an overdraft in the usual course of business, and used by him to build a house, cannot be followed into the building as an express trust fund, so as to subject the building to execution, under constitution 1874, art. 9, § 3, providing that homesteads shall be subject to execution against "trustees of an express trust for moneys due from them in their fiduciary capacity." (Page 331.)

5. BANK CASHIER—TERM OF OFFICE.—Under Sand. & H. Dig. § 1332, providing that private corporations shall choose such other officers as the by-laws of the corporation shall prescribe, all of which said officers shall hold their offices until others shall be chosen in their stead," where the cashier of a bank corporation was chosen for an unfixed term of office, and at the end of a year was re-elected to succeed himself, the act of re-electing him ended his first term, and a bond given by him to cover his first term of office will not cover defalcations occurring in the second term. (Page 332.)

Appeal from Washington Chancery Court.

EDWARD S. McDANIEL, Judge.

*J. D. Walker, Walker & Walker* and *O. W. Watkins*, for appellant.

The burden was on the cashier to account for shortages in the bank's assets. 12 Pick. 303; 1 Pet. 46; 1 Morse, Banks, etc., § 42, note *a*; Murfree, Off. Bonds, § 597. The judgment

of the court declaring appellant's lien upon the capital stock owned by the cashier was correct. Sand. & H. Dig. § 1342; 2 Beach, Priv. Corp. § 646; 60 Ark. 198. The court did not err in refusing to dismiss appellant's complaint. 32 Ark. 300; Woerner, Adm. § 386; 56 Ark. 476; *ib.* 73; 39 Ark. 111. Chancery had jurisdiction. 29 Ark. 407. The homestead was not exempt from the payment of the bank's claim, since the cashier stood in the position of a trustee of an express trust. Const. Ark. § 3, art. 9; 1 Perry, Tr. § 2; 56 Ark. 585; Suth. Stat. Const. § 268; 3 How. 202; 37 La. Ann. 410; 1 Pom. Eq. § 157. The bank had a right to follow up the trust fund into the house. 36 Fed. 229; 133 U. S. 694. Our statutes do not limit a cashier's term of office to one year. Sand. & H. Dig. §§ 1330, 1332. Hence his bond was a continuing obligation, and did not expire in one year. 2 Met. 522; Morse, Banks, etc., §§ 16, 27; 7 N. H. 21; Murf. Off. Bonds, 633; 1 Har. & G. (Md.) 413; 2 Pick. 340; 40 U. S. App. 225. The construction placed on a contract by the parties should control. 131 N. Y. 19; 124 U. S. 505; 95 U. S. 505; *id.* 269; 1 Beach, Cont. 721.

*L. W. Gregg* and *B. R. Davidson*, for appellees.

Mere proof of shortage does not make out a case of misappropriation. 87 Fed. 157–161. An affidavit authenticating a claim against a decedent's estate is a condition precedent to the right to maintain an action against the personal representative. 7 Ark. 78; 14 Ark. 237; 14 Ark. 247; 30 Ark. 756; 48 Ark. 360; Sand. & H. Dig. §§ 114, 116, 119; 28 Ark. 267; 25 Ark. 318; 38 Cal. 323; 56 Mich. 15; 32 N. E. 184; 5 Stew. (N. J. Eq.) 146; 90 Ill. 457; 51 Ala. 292; 58 Ala. 25. The affidavit to the complaint is not sufficient for this purpose. 48 Ark. 304; 18 Ark. 334; 21 Ark. 519. By our statute, and by reason of the fact that the cashier was, in fact, elected every year, the office was an annual one. Sand. & H. Dig. §§ 1330–1332, 1337. The clause in the statute continuing the terms of all officers not therein named "until others shall be chosen in their stead" is intended to cover only a reasonable time, and beyond that the bondsmen are not held liable. 72 Mo. 597; 7 Gray, 1; 40 N. Y. L. 215; 34 Vt. 371; 4 Dill. 185. Re-election of the same party is the

election of a successor, within the meaning of the law, and discharges the old bond. 40 Kas. 661; 40 N. Y. L. 207; 29 Minn. 398; 72 Mo. 597; 7 Gray, 1; 40 N. Y. L. 215; 34 Vt. 371. The bond was an annual one. 2 M. & Sel. 363–370; 33 Barb. 196; 42 N. H. 59; 39 Eng. L. & Eq. Rep. 326; 2 Saund. Part 2, 403; 6 East, 506; 2 Bing. 32; 2 Barn. & Ald. 431; 72 Mo. 597, 602; 4 Dill. 186; 1 How. 250; 67 Cal. 505; 48 Pa. St. 446; 28 Conn. 387; 40 N. Y. L. 215; 33 Barb. 196; 45 N. Y. Supp. 420; 16 Fla. 204; 2 Hill (S. Car.), 589; 7 Gray, 1; 8 Allen, 371; 40 Kas. 661; 64 Cal. 213; 10 Ia. 39; 80 Me. 362; 29 Minn. 398; 34 Vt. 371; 69 Vt. 12. A surety's liability can not be extended by implication. 15 Peters, 187–208–209; 9 Wheat, 703; 111 U. S. 38–42; 21 Wall, 652; Murf. Off. Bonds, § 620. The fact that the business of the bank was carried on in an illegal manner (see Sand. & H. Dig. §1715) released the sureties. 41 Miss. 142–186; 1 Story, Eq. § 215; 5 So. Law Rev. 813; Kerr, Fr. & Mist. 123 and note; 22 Ind. 207; 36 Me. 179; Thomp. Liab. Off. Corp. 520; 3 M. & G. 378; 1 Story, Eq. 323–5; 23 Eng. L. & Eq. Rep. 633; 39 N. J. L. 135; 34 O. St. 411; 40 *id.* 409. The knowledge of the president or directors as to the illegal methods is sufficient. 75 Fed. 769; Th. Corp. §§ 5222–5229 and note 2; Wade, Notice, §§ 681–2. The election of an "assistant cashier" also released the sureties. 16 Gray, 474; 6 Curtis, 233–236. None of appellees occupy the station of trustee of an express trust. 26 Barb. 635–640; Bouvier's Dict. "Trusts;" Anderson's Dict. "Trusts," "Express Trusts;" Rap. & Law. Dict. same. The exemption laws are construed most strongly for the protection of the homestead. 56 Ark. 563; 25 Ark. 272; Thomp. Hom. & Ex. §§ 4, 7, 731, 936.

*J. D. Walker* and *Walker & Walker*, in reply.

When the estate of a decedent is jointly liable, with others, for a debt, affidavit to the claim is not required before suit, but would become necessary only after a judgment was recovered and sought to be enforced against the estate. Sand. & H. Dig. § 5634; 50 Ark. 63; Ohio Code, § 38; 5 Oh. St. 586; 3 Abb. 306. Equity, once having jurisdiction, will afford full relief in all respects. 51 Ala. 445; 13 Mo. 321; 43 Miss. 437. The

intention of the parties as to the duration of the bond governs. 1 Brandt, Suretyship and Guaranty, § 172; 1 Allen, 339; 75 Cal. 513; 5 H. L. Cas. 856; 8 Heisk. 312. The statute making the office of director annual did not affect the cashier's term. 3 La. Ann. 674; 81 Cal. 528. The enumeration of parties in the statute impliedly excluded all others. Broom's Leg. Max. 652; Suth. Stat. Const. § 327; 31 La. Ann. 678.

BUNN, C. J. This is a bill in equity against the widow, heir and executrix of a deceased cashier of the plaintiff bank, and against his bondsmen as such cashier, and seeking to subject certain property, of which he died seized, to the satisfaction of such decree as might be rendered against his estate. Decree in part for plaintiff and in part for defendants, as will appear in the statement of facts and the opinion, and both parties appealed.

The findings of fact by the court were to the effect that the deceased was owing the bank, as shortage in his account, something over $18,000; that he had $3,500 worth of paid up stock in the bank, and that this was subject to his said indebtedness, and was so appropriated; that the homestead of deceased was not bound for any of said shortage; that the claim was not authenticated, as required by statute, so as to authorize a judgment against the estate.

The statute requires that all claims against estates of deceased persons, capable of being asserted either in a court of law or equity, shall be authenticated by affidavits of the claimants to the effect that the claims are just, and have not been paid, in whole or in part, as the case may be. *Ryan* v. *Lemon*, 7 Ark. 78; *Bernie* v. *Emboden*, 14 Ark 237; *Sanders* v. *Rudd*, 21 Ark. 519; *Walker* v. *Byer*, 14 Ark. 247; *Bennett* v. *Dawson*, 18 Ark. 334; *Alter* v. *Kinsworthy*, 30 Ark. 756; *Wilkerson* v. *Gordon*, 48 Ark. 360.

And this affidavit is necessary to authenticate a claim arising out of an alleged breach of trust. *Green* v. *Brooks*, 25 Ark. 318.

The affidavit is necessary to authenticate the claim for the amount of a defalcation, like the one in suit. But there are exceptions to the rule, as in the cases of mortgages and the

like, and it is contended by the plaintiff that its prayer to subject the bank stock and the homestead to the payment of this defalcation is properly among the exceptions.

The statute gives the bank a lien on all stock of a debtor to the bank for the amount of his indebtedness; and not only so but specifically provides for the enforcement of this lien. Sections 1342, 1352, 1353 and 1354 of Sandels & Hill's Digest. And the law is even stronger in favor of the bank when we take into consideration the fact that the stockholder really has no power to control or dispose of his stock while so indebted, except by the consent of the bank; for no transfer of stock is available except it be made on the books of the bank. This being the case, there was no necessity for an authentication of the claim, in order to subject this stock to the payment of the debt *pro tanto*, for the bank, in effect, had the possession of the stock.

There is some uncertainty as to whether the plaintiff means to include the $1,801.50 expended by the deceased in erecting his residence as his homestead in the $18,000 defalcation decreed, or that it is a separate and additional misappropriation of its funds by the deceased; but we infer that it is a part of the former, as the decree for that amount seems to be for the balance of accounts generally, but this is really not material.

It is contended by plaintiff that this indebtedness of the deceased is for an express trust fund, for which he has failed to account, and therefore, under section 3, article 9, of the constitution, the homestead is not exempt from execution or other process to satisfy the decree for such indebtedness. What has been already said in reference to the want of authentication of the claim of the bank against the estate of Dickson settles this question; for, when there can be no judgment on the debt, there of course can be no process on it against the debtor's property of any class.

It is contended, however, in this connection, that the money expended in building Dickson's residence was a portion of the trust fund of the bank in his hands and under his control at the time, and that the same can be followed into the building, and the latter made subject to its repayment to the bank. The facts of this part of the case are these: That Dick-

son was the owner by inheritance of the lot of ground upon which the residence was erected; that he expended in the erection of the building the sum of $1,801.50, which was paid out to workmen, material men and laborers from time to time in small amounts, on checks drawn by Mrs. Lelia Dickson, the wife of J. L. Dickson, as he stated, in order to keep that separated from his other accounts; and, after the completion of the building, it appears that Dickson paid, in cash or its equivalent, on this $1,801.50 due the bank, the sum of $951.50, and gave his note for the balance ($750), which note, however, the plaintiff says it has been unable to find. There does not appear to have been any secrecy or concealment connected with this transaction. Everything seems to have been open to the inspection of the directors and other bank officials. This being the case, the money so drawn out and expended on said building constituted rather a loan in the usual way from the bank than a misuse of trust funds; for, in incurring an indebtedness by checks on a bank in the usual way, even where one overdraws, the drawer does not ordinarily make himself a trustee to account as such for the amount drawn out, and in the absence of secrecy, as we have said, we think this was no trust fund. Besides, Dickson all this time had $3,500 worth of stock to his credit in bank, to answer for any overdraft he might make. It follows, therefore, that the homestead cannot be reached and made subject to the overdraft, as is sought to be accomplished in this case.

The defendants contend that the office of cashier held by the deceased, J. L. Dickson, was an annual office, and therefore that the bond given to cover the first term of one year is not a bond for defalcations accruing during the second term or year, as is alleged in this case. Whether the language of the act justifies such a contention, it is unnecessary for us to stop to inquire just now. This much, however, does appear, that the cashier of this particular bank at least held subject to the will and pleasure of the directors, and that these, at the end of the first term or year, proceeded to and did re-elect or choose Dickson to succeed himself, but failed to exact the usual bond of him for the future term, whatever that might be; and so the question with us is whether the old bond of

the previous year covered Dickson's official conduct during his new term. The statute on the subject is as follows, to-wit: Section 1332, Sandels & Hill's Digest: "The directors of every such corporation shall choose one of their number to be president, and shall also choose a secretary and treasurer, which two last-named officers shall reside-and have their place of business and keep the books of said corporation within this state, and shall choose such other officers as the by-laws of the corporation shall prescribe; all of which said officers shall hold their offices until others shall be chosen in their stead." Neither the statutes nor by-laws of the bank in this case fix the term, other than is done in the section of the digest quoted above. The directors chose Dickson as his own successor at the end of the first year, and, in the meaning of the statute quoted, that act ended the first term of Dickson; and, as all the shortages complained of occurred after this re-election, it follows that they are not covered by the bond given for the expired term or the first year. The bondsmen, therefore, are not liable. It is unnecessary to discuss the question of fact whether Dickson was really in arrears or not. A majority think there is evidence to sustain the chancellor, while a minority are inclined to think otherwise.

Affirmed.