## JOHNSON v. UMSTED et al.
### No. 9539.

Circuit Court of Appeals, Eighth Circuit.
March 1, 1933.

Forrest B. Jackson, of Jackson, Miss., Henry Stevens, of Magnolia, Ark., Price, Cassidy & McLain, of McComb, Miss., and Green, Green & Jackson, of Jackson, Miss., on the brief), for appellant.

T. J. Gaughan, of Camden, Ark. (E. E. Godwin and J. E. Gaughan, both of Camden, Ark., on the brief), for appellees.

Before KENYON, GARDNER, and SANBORN, Circuit Judges.

SANBORN, Circuit Judge.

The appellant will be referred to as plaintiff, and the appellees as defendants, as in the court below. The plaintiff is an illiterate colored woman about 60 years of age. The defendants are the administratrix of the estate and the heirs of Sid Umsted, a white man, who died November 3, 1925. The suit is brought in equity to recover an undivided one-quarter interest in 80 acres of land in Ouachita county, Ark., upon which there are eight producing oil wells, and for an accounting of the royalties collected therefrom by Sid Umsted during his lifetime and by his estate since his death. In her complaint, the plaintiff asserts that Umsted procured the property and royalties through fraud and under such circumstances that in equity they were impressed with a trust in her favor. Her assertions are denied by the defendants. In addition, the defendants claim that the plaintiff's suit is barred by laches and limitations. A decree of dismissal was entered in

the court below, and from that decree the plaintiff has appealed.

Many of the facts are not in dispute, and the record contains all of the evidence offered upon the trial. The ultimate question which we are called upon to determine is whether, upon the facts conceded and those established by competent and relevant testimony, the decree below was justified, or whether such facts require a different decree.

■■ An appeal in an equity suit invokes a new hearing and decision of the case upon its merits upon the lawful evidence. Anderson v. Hultberg (C. C. A. 8), 247 F. 273, 279; Dowagiac Mfg. Co. v. Lochren (C. C. A. 8) 143 F. 211, 214, 6 Ann. Cas. 573; Unkle v. Wills (C. C. A. 8) 281 F. 29, 34; Westermann v. Dispatch Printing Co. (C. C. A. 6) 233 F. 609, 611 (reversed on other grounds 249 U. S. 100, 39 S. Ct. 194, 63 L. Ed. 499); Presidio Mining Co. v. Overton (C. C. A. 9) 270 F. 388, 390; American Central Ins. Co. v. Harmon Knitting Mills (C. C. A. 7) 39 F.(2d) 21, 24; Jonah v. Armstrong (C. C. A. 10) 52 F.(2d) 343, 345. The reviewing court will, if possible, dispose finally of an equity suit upon the record on appeal and not remand it for further trial in the District Court. Harrison v. Clarke (C. C. A. 8) 182 F. 765, 767; Unkle v. Wills (C. C. A. 8) 281 F. 29, supra.

■ Since the rulings of the lower court upon the admissibility of evidence in an equity suit are in no way binding upon us and if wrong do not constitute reversible error (Unkle v. Wills, supra), it is unnecessary to discuss the assignments of error based upon them.

■ In determining what the facts are from the evidence which we regard as relevant and competent, we have not lost sight of the established rule that the findings of the trial court in suits in equity are presumptively correct, and, unless clearly against the weight of the evidence or induced by an erroneous view of the law, will not be disturbed. United States v. United Shoe Machinery Co. of New Jersey, 247 U. S. 32, 41, 38 S. Ct. 473, 62 L. Ed. 968; Butte & Superior Copper Co., Ltd., v. Clark-Montana Realty Co., 249 U. S. 12, 30, 39 S. Ct. 231, 63 L. Ed. 447; Unkle v. Wills (C. C. A. 8) 281 F. 29, 36, supra; Lion Oil Refining Co. v. Albritton (C. C. A. 8) 21 F.(2d) 280, 282; Nave-McCord Merc. Co. v. Ranney (C. C. A. 8) 29 F.(2d) 383, 389; Karn v. Andresen (C. C. A. 8) 60 F.(2d) 427, 429. Neither are we unmindful that it requires clear and convincing evidence to establish an implied or resulting trust in land by parol. Streeter v. Gamble, 298 Ill. 332, 131 N. E. 589, 23 A. L. R. 1485; Lefkowitz v. Silver, 182 N. C. 339, 109 S. E. 56, 23 A. L. R. 1491 and note; Howland v. Blake, 97 U. S. 624, 626, 24 L. Ed. 1027; Hopkins v. Grimshaw, 165 U. S. 342, 352, 17 S. Ct. 401, 41 L. Ed. 739; Levis v. Kengla, 169 U. S. 234, 236, 18 S. Ct. 309, 42 L. Ed. 728; Reed v. Munn (C. C. A. 8) 148 F. 737, 744 (certiorari denied 207 U. S. 588, 28 S. Ct. 255, 52 L. Ed. 353).

We shall state the facts as we find them to be from the admissions of the parties and from the lawful evidence:

The plaintiff is the widow of Sam L. Johnson, also a negro, who died October 22, 1919. Johnson had been employed by Sid Umsted, who operated a sawmill upon the 80 acres, an undivided interest in which is the subject of this suit. Sid Umsted had acted as his business and financial adviser. Sam Johnson, at the time of his death, owned this 80 acres. This land was his homestead. It was subject to a mortgage in favor of M. P. Watts & Bro. for approximately $1,000, and was also subject to an oil and gas lease to E. P. Edwards, trustee, dated May 19, 1919, under which lease Sam L. Johnson had reserved a one-eighth royalty in all oil produced from the land. This lease was subsequently assigned by the lessee to the Standard Oil Company and the Gulf Refining Company, which developed the land for oil and gas. Sam Johnson left surviving him his wife, the plaintiff, his half-brother, Jesse Johnson, and his sister, Jane Warren. Upon the death of Sam Johnson, the plaintiff acquired a homestead right in the land and became the owner in fee of an undivided one-half; Jesse Johnson and Jane Warren became the owners of the other undivided one-half, subject to the homestead right of the plaintiff. So long as the plaintiff did not abandon this land as her homestead, she was entitled to all rents, profits, and royalties therefrom. If she abandoned her homestead, Jesse Johnson and Jane Warren would become entitled to the rents and royalties from their undivided one-half. The plaintiff continued to live on the homestead after her husband's death. Sid Umsted was her business and financial adviser, and she relied upon him for advice and assistance in dealing with her land. Oil was discovered about one mile from this land in July, 1922. C. M. Martin attempted to buy her interest in the oil upon her land, but she refused to deal with him and referred him to Umsted, stating that she had turned over everything to Umsted to attend to for her.

On July 26, 1922, C. M. Martin, acting for himself, procured from Jane Warren a deed conveying her interest in this land to the plaintiff. On July 27, 1922, Sid Umsted, acting for the plaintiff, procured from her a deed conveying to C. M. Martin sixty-three sixty-fourths of all oil, gas, and mineral in the land, subject to the lease to Edwards, trustee. The expressed consideration in this deed was $2,000. As the result of this transaction, the mortgage to Watts Bros. was paid and the plaintiff received $500. At the time she signed this deed, she did not understand its nature or effect, nor was it explained to her. She did not intend to convey sixty-three sixty-fourths of her oil nor to abandon her homestead rights. She signed the instrument at the request and upon the advice of Sid Umsted. Jane Warren brought suit on August 11, 1922, in the state court to set aside her deed to Mandy Johnson, joining her with Martin and Jesse Johnson as defendants. In the first complaint filed, Sid Umsted was named as a defendant, but a substituted complaint was later filed in which his name was omitted, and he was not a party to the action. It later appearing that Jesse Johnson had conveyed a part of his interest to L. J. Cook, who was his attorney, Cook was brought in as a defendant. In the Jane Warren suit, Mandy Johnson was represented by counsel procured for her by Sid Umsted. In procuring counsel to represent her, Sid Umsted acted for her and with respect to her homestead and for the purpose of protecting her rights therein. While that suit was pending and on September 7, 1923, Sid Umsted purchased from Jesse Johnson and L. J. Cook the Jesse Johnson undivided one-quarter of this land, including all oil and gas rights, paying $7,000 therefor. He did not advise the plaintiff of this purchase, and she has never consented to it. She first learned of it subsequent to October 17, 1923. On October 17, 1923, Martin procured a deed from Mandy Johnson conveying the entire 80 acres to him and all oil and gas that should be produced therefrom in the future. The case of Jane Warren against Mandy Johnson and others was decided by the Supreme Court of Arkansas on April 20, 1925. See Warren v. Martin, 168 Ark. 682, 272 S. W. 367. It was determined that the mineral deed given by Mandy Johnson to Martin constituted an abandonment of her homestead, and that the deed from Jane Warren to her was void. After the decision of the Supreme Court of Arkansas, Mandy Johnson was without any right, title, or interest in this land if her deeds to Martin were valid, Jane Warren was the

owner of an undivided one-quarter of the land and royalties, Sid Umsted had an undivided one-quarter, and Martin was the owner of record of an undivided one-half.

In January, 1926, Mandy Johnson, who had become a citizen of Louisiana, brought a suit in the federal court against Martin to cancel the two deeds which Martin had obtained from her. The court found that the deeds had been obtained by fraud and should be canceled, and a decree was entered to that effect on March 21, 1927. This decree, of course, did not and could not affect the rights of grantees, under deeds from C. M. Martin, Jane Warren, and Jesse Johnson, who were not parties to the suit. The present suit was commenced July 6, 1927.

The royalties which have been received by Sid Umsted during his lifetime and by his estate since his death from the Jesse Johnson interest exceed $7,000, the amount which he paid for such interest.

The controverted questions of fact in the court below were whether Sid Umsted bore to the plaintiff a relation of trust and confidence with respect to her land, whether the Jesse Johnson interest was procured by him in fraud of her rights, and whether there existed between Umsted and Martin a conspiracy to defraud her.

The court did not make findings in accordance with Equity Rule 70½ (28 USCA § 723), but filed an opinion [1] stating the facts and his conclusion, and directing that findings of fact and conclusions of law be presented for approval, together with a decree dismissing the plaintiff's complaint. In his opinion the court does not say that the relation which existed between the plaintiff and Sid Umsted was not a fiduciary one, and does not specifically find that Sid Umsted was not the adviser of the plaintiff as she testified. The court says: "The records both in the state and federal courts were offered as proof in this case, but objections were made and sustained to their admission, upon the ground that Umsted was not a party in those suits. With that testimony inadmissible there is only the testimony of plaintiff and her nephew upon which a finding of fraud as against Umsted may be had in this case. Before he can be held to be a trustee for plaintiff, as to the Jesse Johnson royalty interest, there must be proof that at the time he advised Mandy Johnson to make a conveyance of her sixty-three sixty-fourths royalty interest to Martin, there was a scheme between him and Martin to deprive her of her royalty."

[1] Not for publication.

No findings of fact and conclusions of law were presented, but the decree contains this language: "The court finds that the evidence does not sustain the contentions of the plaintiff, and, therefore, finds the issues of law and fact in favor of the defendants, and that plaintiff's petition should be dismissed for want of equity."

While a specific finding that there was no relation of trust and confidence existing between the plaintiff and Sid Umsted would not prevent this court from finding that there was, such a specific finding would have indicated that the lower court did not believe the uncontradicted evidence of the plaintiff and her witnesses to the effect that Sid Umsted was her business and financial adviser with respect to her homestead, or that that fact was otherwise established. The opinion of that court indicates that, in his judgment, the plaintiff was required to prove a fraudulent scheme between Sid Umsted and Martin to deprive her of her royalties, and that, having failed to do so, her suit must be dismissed. [6] The plaintiff relies upon the settled rule that one who bears to another a relation of trust and confidence with respect to certain property may not himself, in the absence of the consent of his cestui que trust, acquire an interest in that property without being compelled to disgorge.

Perhaps the leading case in this Circuit is that of Trice v. Comstock (C. C. A.) 121 F. 620, 61 L. R. A. 176. The rule was thus stated (page 622 of 121 F.):

" * * * The law peremptorily forbids every one who, in a fiduciary relation, has acquired information concerning or interest in the business or property of his correlate from using that knowledge or interest to prevent the latter from accomplishing the purpose of the relation. If one ignores or violates this prohibition, the law charges the interest or the property which he acquires in this way with a trust for the benefit of the other party to the relation, at the option of the latter, while it denies to the former all commission or compensation for his services. This inexorable principle of the law is not based upon, nor conditioned by, the respective interests or powers of the parties to the relation, the times when that relation commences or terminates, or the injury or damage which the betrayal of the confidence given entails. It rests upon a broader foundation, upon that sagacious public policy which, for the purpose of removing all temptation, removes all possibility that a trustee may derive profit from the subject-matter of his trust, so that one whose confidence has been betrayed may enforce the trust which arises under this rule of law although he has sustained no damage, although the confidential relation has terminated before the trust was betrayed, although he had no legal or equitable interest in the property, and although his correlate who acquired it had no joint interest in or discretionary power over it. The only indispensable elements of a good cause of action to enforce such a trust are the fiduciary relation and the use by one of the parties to it of the knowledge or the interest he acquired through it to prevent the other from accomplishing the purpose of the relation.

"And, within the prohibition of this rule of law, every relation in which the duty of fidelity to each other is imposed upon the parties by the established rules of law is a relation of trust and confidence."

See, also, Gunn v. Black (C. C. A. 8) 60 F. 151; McKinley v. Williams (C. C. A. 8) 74 F. 94; McCourt v. Singers-Bigger (C. C. A. 8) 145 F. 103, 7 Ann. Cas. 287; Byrne v. Jones (C. C. A. 8) 159 F. 321, 323; Iroquois Iron Co. v. Kruse (C. C. A. 8) 241 F. 433, 441; Trustees Corporation, Ltd., v. K. C., M. & O. Ry. Co. (C. C. A. 8) 18 F.(2d) 765; Des Moines Terminal Co. v. Des Moines Union Ry. Co. (C. C. A. 8) 52 F.(2d) 616, 627; Keith v. Kellam (C. C.) 35 F. 243, 245; Stahl v. Stahl, 214 Ill. 131, 73 N. E. 319, 68 L. R. A. 617, 105 Am. St. Rep. 101, 2 Ann. Cas. 774; Case and Bates v. Carroll, 35 N. Y. 385; Stephens v. Dubois, 31 R. I. 138, 76 A. 656, 140 Am. St. Rep. 741.

In reaching our conclusion that Sid Umsted bore toward the plaintiff a relation which precluded him from acquiring any interest in her homestead, we have not regarded as competent any of the evidence contained in the purported transcripts of the trials in the state and federal courts, where the issues and parties were different, which were offered by the plaintiff under a mistaken theory of the admissibility of such evidence because of the death of Sid Umsted, who had testified as a witness in at least one of the cases. The admissions of Umsted made upon the stand on that trial would, no doubt, have been competent, but such admissions are not to be proved by an unauthenticated record of the entire trial. The proper way to prove them was by the stenographer who took the testimony or by some other person who heard the admissions. Amor v. Stoeckele, 76 Minn. 180, 78 N. W. 1046; Howard v. Illinois Central R. Co., 116 Minn. 256, 258, 133 N. W.

557. See Jones, Evidence (3d Ed. 1924) § 343; 3 Wigmore, Evidence (2d Ed. 1923) § 1416. We have not considered any of the testimony of the plaintiff with respect to any conversations or transactions with Sid Umsted, but have based our determination upon the evidence of the plaintiff and her witnesses to the effect that a fiduciary relationship existed between Mandy Johnson and Sid Umsted at the time he induced her to sign the deed of July 27, 1922, and during the trial of the Jane Warren Case, and upon those facts and circumstances, most of which are not in dispute, which tend to corroborate her evidence in that regard. There can be little doubt that the plaintiff relied upon Umsted as she said she did. She had known him since 1915. He had operated a mill upon this land. He had been her husband's employer. She could have known nothing about oil or oil lands. She had to consult some one, and it was only natural that she should turn to him for help. She says she did; her nephew and another witness corroborate her. Umsted was present when the deed to Martin of July 27, 1922, was signed; he brought the deed and the notary. He was not acting for Martin. He said he wanted her signature so he could make a deal for her. It is admitted, at least by the administratrix, that Umsted employed counsel for Mandy Johnson in the Jane Warren suit. When she turned to him for advice and assistance, he might have refused to act for her with respect to her homestead, but, once having chosen to act for her, he was thereafter precluded from acquiring for himself any interest in the property without her knowledge and consent so long as she retained any interest in the land or the royalties. He could not serve her and serve himself at the same time, and whether there was actual fraud on his part is unimportant. Jesse Johnson's one-quarter interest in the royalties was adverse to her interest under her right of homestead, and Umsted's purchase of it was a breach of faith on his part. While the law is powerless to supply conscience and honor to those who are lacking in those qualities, it is not always powerless to restore the fruits of faithlessness to those who in justice are entitled to them. Mandy Johnson proved that there had once existed between her and Sid Umsted a relation of trust and confidence with respect to her homestead, and that, in violation of the obligation growing out of that relation and without her knowledge and consent, and while she still retained an interest in her homestead and the royalties under the lease, Sid Umsted had acquired the Jesse Johnson one-quarter interest in the land and royalties. She thus became entitled to a decree that what he had acquired, in equity, belonged to her, unless her suit was barred by laches or limitations as contended by the defendants.

They argue that, having failed to exhibit her demand against the estate of Sid Umsted, as required by the laws of Arkansas, she is precluded from bringing any action upon it.

Section 100 of Crawford & Moses' Digest of the Statutes of Arkansas 1921, provides the manner in which claims against any estate may be exhibited, and refers to demands founded on judgments, notes, or other written contracts. Section 101 requires a verification of a demand by affidavit as to its justice. Section 102 provides that, before any executor or administrator shall pay or allow any such debt, the same shall be sworn to. Section 106 provides that, if the affidavit required for authenticating claims against deceased persons be not produced in an action against an executor or administrator for debt against the deceased, the court shall, on motion, enter a judgment of nonsuit against the plaintiff; and the affidavit must appear to have been made prior to the commencement of the action. Section 107 provides that, if suit be brought for any debt due from a deceased person, without exhibiting to the executor or administrator an affidavit, made pursuant to law, and if such suit be not controverted, the court shall enter judgment against the plaintiff for costs.

These provisions of the statute do not relate to suits for the recovery of real estate. Fred v. Asbury, 105 Ark. 494, 499, 152 S. W. 155. They do apply to the claim of a cestui que trust against the estate of a deceased trustee. Stewart v. Thomasson, 94 Ark. 60, 126 S. W. 86; McIlroy Banking Co. v. Dickson, 66 Ark. 327, 50 S. W. 868; Padgett v. State, 45 Ark. 495; Patterson v. McCann, 39 Ark. 577; Hill v. State, 23 Ark. 604; Purcelly v. Carter, 45 Ark. 299; Nichols v. Shearon, 49 Ark. 75, 4 S. W. 167. In so far as the plaintiff's suit is one to recover real property, it is not affected by her failure to exhibit her demand against the estate of Sid Umsted; but, in so far as it is a suit to recover royalties collected by him during his lifetime, it is barred by such failure.

The defendants, however, assert that the suit, so far as it relates to the land, is one to establish a constructive trust, and is barred by section 6950, Crawford & Moses' Digest 1921, which provides:

"The following actions shall be com-

menced within three years after the cause of action shall accrue, and not after:

"First. All actions founded upon any contract or liability, expressed or implied, not in writing."

Under the decisions of the Supreme Court of Arkansas, a suit brought to impose an equitable lien upon real estate is governed by this three-year statute (Dismukes v. Halpern, 47 Ark. 317, 1 S. W. 554; Cotham v. Lucy, 115 Ark. 84, 171 S. W. 113), and it is probable that it also applies to suits to recover the proceeds of land impressed with a trust. Matthews v. Simmons, 49 Ark. 468, 5 S. W. 797. A trustee of a constructive trust may plead the statute of limitations. Matthews v. Simmons, supra, 49 Ark. 475, 5 S. W. 797; Thomas v. Sypert, 61 Ark. 575, 33 S. W. 1059; Holloway v. Eagle, 135 Ark. 206, 205 S. W. 113. The statute, where applicable, is, under the Arkansas decisions, as binding in equity as at law. McGaughey v. Brown, 46 Ark. 25; Millington v. Hill Fontaine & Co., 47 Ark. 301, 313, 1 S. W. 547; Baldwin v. Williams, 74 Ark. 316, 317, 86 S. W. 423, 109 Am. St. Rep. 81, 4 Ann. Cas. 1097; Earle Improvement Co. v. Chatfield, 81 Ark. 296, 302, 99 S. W. 84; Holloway v. Eagle, supra; Vance v. White, 180 Ark. 470, 473, 21 S.W.(2d) 853.

The defendants cite, in support of their contention, the decision of this court in the case of Percy v. Cockrill, 53 F. 872. It was there said (page 876 of 53 F.) : "In cases of concurrent jurisdiction the federal courts, sitting in equity, consider themselves bound by the statutes of limitations which govern courts of law in like cases, and this rather in obedience to the statutes than by analogy. In many other cases they act upon the analogy of the statutory limitations at law. Generally courts of equity act, or refuse to act, in analogy to the statute, and they will not be moved to set aside a fraudulent transaction or to enforce a constructive trust, at the suit of one who has been quiescent during a period longer than that fixed by the statute of limitations, after the complainant had knowledge of the fraud or trust, or after he was put upon inquiry, with the means of knowledge accessible to him."

The suit with which the court was dealing was brought to impress a constructive trust upon certain real estate devised to the sons of the testator, the will containing this provision: "Having full confidence in my sons aforesaid, and in their disposition to deal justly and liberally, I leave it to them to make proper and suitable provision for their sisters, Susan, Margaret, and Nancy."

The plaintiff in the suit was one of the sisters, and she charged a breach of trust and asked that she be decreed to be the owner of one-fifth of the land of which the testator died seized. It was held that the three-year statute applied because the suit could not be regarded as one to recover real estate which might be brought within seven years. The court said (page 877 of 53 F.) : "It is true that in the prayer of the bill a decree that the complainant is entitled to one fifth of every part of the land of which William Armstrong died seised is asked, but the case made by the bill warrants no such relief. By the first clause of the will the legal title and the power of disposition of all the property of William Armstrong were vested in the three brothers. No title, no right to the possession, no right of action for the recovery of any of the property, was vested in the complainant. The title, possession, and power of disposition were given to the three brothers, with full discretion to manage and sell any part of the property, as their judgment dictated, after the youngest of the three attained his majority, and to make the provision for the daughters either out of the property itself or out of its proceeds, as they saw fit; and the complainant never could have recovered any part of it from her brothers, or have enjoined or prevented their sale or disposition of any of it, so long as they acted with reasonable discretion and in good faith towards her, with intent to fairly carry out the trust declared in the will."

That case is readily distinguishable from this one, since this is clearly a suit to recover the title and possession of real property and is not a suit solely to impose an equitable lien upon it. Section 6942 of Crawford & Moses' Digest 1921, provides: "No person or persons, or their heirs, shall have, sue or maintain any action or suit, either in law or equity, for any lands, tenements or hereditaments but within seven years next after his, her or their rights to commence, have or maintain such suit shall have come, fallen or accrued; and all suits, either in law or equity, for the recovery of any lands, tenements or hereditaments shall be had and sued within seven years next after title or cause of action accrued, and no time after said seven years shall have passed."

That this statute applies to suits in equity to recover lands as well as to actions at law is not only apparent from the express wording of the statute, but is indicated by Riley

v. Norman, 39 Ark. 158, and McGaughey v. Brown, 46 Ark. 25, 33, from which we quote:

"It is argued in the outset that this is not a suit for the possession of lands, and therefore that neither the act prescribing a limit of five years for actions against purchasers at judicial sale nor the general seven years statute is applicable.

"There is no mistaking the object of the bill. It seeks to establish title to the lands in the appellees; and that being accomplished, to reap the advantages that follows ownership, i. e., possession."

See, also, Holloway v. Eagle, 135 Ark. 206, 216, 205 S. W. 113, supra.

Less than four years elapsed between the time Sid Umsted acquired his interest in the land and the bringing of this suit.

The defendants argue that, under the peculiar circumstances of this case, the plaintiff having waited until after the death of Sid Umsted, the suit is barred by laches.

Quoting from a recent decision of this court: "Laches is an inexcusable delay in asserting rights. Mere lapse of time does not constitute laches. To wait an unreasonable time before seeking relief from a known wrong may amount to laches. It is to be determined by consideration of justice, and that is dependent upon the circumstances of each particular case." Des Moines Terminal Co. v. Des Moines Union Ry. Co. (C. C. A.) 52 F.(2d) 616, 630.

In the case of Townsend v. Vanderwerker, 160 U. S. 171, 186, 16 S. Ct. 258, 262, 40 L. Ed. 383, the court said: "The question of laches does not depend, as does the statute of limitation, upon the fact that a certain definite time has elapsed since the cause of action accrued, but whether, under all the circumstances of the particular case, plaintiff is chargeable with a want of due diligence in failing to institute proceedings before he did. In this case, we think the delay is fully explained. Gunton v. Carroll, 101 U. S. 426 [25 L. Ed. 985]. It is true that one of the parties to this alleged agreement has died, and that the court has lost the benefit of her testimony with regard to the alleged agreement. This, however, is a circumstance to be considered by the court in weighing the evidence, rather than an obstacle to the maintenance of the bill upon demurrer." See, also, Nave-McCord Merc. Co. v. Ranney (C. C. A. 8) 29 F.(2d) 383, 391.

Sid Umsted died approximately two years after the plaintiff discovered that he had purchased Jesse Johnson's interest in the 80

acres. During his lifetime he had the benefit of the royalties accruing to this interest, and his estate has had them since his death. Under the circumstances, there has been no material damage done by the delay, and, while it is unfortunate that the plaintiff did not commence her suit and try it before Mr. Umsted died, she could not foretell that event. There would appear to be little justification for holding that, although the plaintiff, who certainly cannot, because of lack of intelligence, education, and business experience, be held to the highest degree of diligence, is not barred from bringing her suit under the laws of Arkansas, she was barred by the equitable doctrine of laches, which is never consciously invoked for the purpose of defeating justice.

In order to avoid any misunderstanding as to the effect of state statutes of limitation upon suits in equity tried in the federal courts, attention should be called to the rule that, while those courts sitting in equity are usually guided by such statutes, they are not bound by them.

"While it is true that federal courts sitting in equity are not bound by state statutes of limitations (Kirby v. Lake Shore & Michigan Southern Railroad, 120 U. S. 130, 7 S. Ct. 430, 30 L. Ed. 569), they are under ordinary circumstances, guided by them in determining their action on stale claims (Godden v. Kimmell, 99 U. S. 201, 210, 25 L. Ed. 431; Philippi v. Philippe, 115 U. S. 151, 5 S. Ct. 1181, 29 L. Ed. 336; Pearsall v. Smith, 149 U. S. 231, 13 S. Ct. 833, 37 L. Ed. 713; Alsop v. Riker, 155 U. S. 448, 15 S. Ct. 162, 39 L. Ed. 218). Compare Sullivan v. Portland & Kennebec R. R. Co., 94 U. S. 806, 811, 24 L. Ed. 324." Benedict v. City of New York, 250 U. S. 321, 327, 39 S. Ct. 476, 478, 63 L. Ed. 1005.

"Ordinarily laches runs pari passu with the statute of limitations. If the latter has barred the analogous action at law, laches has stayed the corresponding suit in equity. But if unusual conditions or extraordinary circumstances make it inequitable to allow the prosecution of a suit after a briefer, or to forbid its maintenance after a longer, period than that fixed by the statute, the chancellor will not be bound by the statute, but will determine the extraordinary case in accordance with the equities which condition it. Kelley v. Boettcher, 56 U. S. App. 363, 375, 29 C. C. A. 14, 21, and 85 F. 55, 62." Cooper v. Hill (C. C. A. 8) 94 F. 582, 590.

"There is no general statute of limitations in the laws of the United States relating to suits in equity, and in such suits the federal

courts are not bound by state statutes of limitations." Johnson v. White (C. C. A. 8) 39 F.(2d) 793, 798. See, also, Reed v. Fairmont Creamery Co. (C. C. A.) 37 F.(2d) 332.

In this case, while we are not required to follow the limitations prescribed by the laws of Arkansas, we think there are no unusual circumstances which would warrant a refusal to be guided by them.

The decree of the court below is, in our opinion, contrary to the evidence, and based upon a misapprehension of the law.

The plaintiff is in equity the owner of the land for which she sues, and entitled to have it conveyed to her. She is not entitled to recover from the defendants any royalties collected therefrom by Sid Umsted during his lifetime, because of her failure to exhibit a claim against his estate therefor. She is entitled to an accounting for the royalties received by the defendants since his death, since those royalties were never a part of his estate. The record does not show whether Sid Umsted was fully reimbursed for the purchase price of the land and for carrying charges out of royalties received by him during his lifetime. If he was not, upon an accounting for royalties received by his estate, that matter can be adjusted.

The decree appealed from is reversed. The court below will enter a decree in favor of the plaintiff in conformity with this opinion, and will conduct such further proceedings as may be necessary to make the decree effective.