## MOSS v. EQUITABLE LIFE INS. CO. OF IOWA.

### No. 9312.

Circuit Court of Appeals, Eighth Circuit.

June 8, 1934.

George B. Whissell and Edward W. Tobin, both of St. Louis, Mo., for appellant.

Sears Lehmann, of St. Louis, Mo. (Henry & Henry, of Des Moines, Iowa, on the brief), for appellee.

Before STONE and SANBORN, Circuit Judges, and WYMAN, District Judge.

WYMAN, District Judge.

This is an appeal from a decree of the District Court of the United States for the Eastern District of Missouri in a proceeding which was originally instituted by Equitable Life Insurance Company of Iowa as an interpleader suit, based upon a certain life insurance policy issued upon the life of one Herman Y. Moss, in the sum of $10,000, and containing the ordinary provision for the payment of double the face amount of the policy upon proof of the death of the insured as a result of violent, external, and accidental means.

The bill of complaint, among other things, alleges the death of the insured and admits the liability of the plaintiff for $10,000, the face of the policy. The bill also names R. Morton Moss, individually and as trustee, and Martha N. Moss, as adverse claimants of the fund, and concludes with a prayer for the relief usually asked in interpleader suits.

The defendants filed separate answers and cross-bills each of which, among other things, alleges that insured's death was caused by accidental means; that plaintiff is liable under the double indemnity clause of the policy in the sum of $20,000, and praying that the petition be dismissed and the suit terminated without prejudice, or, in the alternative, that the action be permitted to continue solely on the cross-bills of the defendants and for judgment against the plaintiff in the sum of $20,000, and other relief.

Plaintiff filed a reply to the answers and cross-bills denying any liability in excess of $10,000, alleging that insured came to his death by suicide intentionally and deliberately committed while sane, and asking for the relief prayed for in the complaint. Defendants filed separate rejoinder specifically denying the allegations of the reply and asking for the relief prayed for in the cross-bills.

On February 4, 1932, the parties to the suit entered into a stipulation which reads, in part, as follows: "Come now all the parties plaintiff and defendant to this cause of action by their respective and duly authorized attorneys of record, and, in an endeavor to speed the trial of this cause, stipulate and agree to a trial and hearing at this time separately of the issue raised by the pleadings of the parties with respect to the right of plaintiff to an order of interpleader and further with respect to the determination of the extent and amount of liability of plaintiff to whichever of the interpleading defendants as may be later finally determined to be entitled to the proceeds of a certain insurance policy No. 321677 issued by plaintiff to one Herman Y. Moss and more fully described in the pleadings filed herein according to their respective interpleas, and further agree to a determination thereof by the Court, without aid or intervention of a jury, whatever rights any party hereto has or may have to a jury

796

for the trial of this issue being hereby expressly waived." And the case was tried to the court without a jury pursuant to said stipulation. The trial resulted in findings of fact and conclusions of law in_favor of the plaintiff, and on June 13, 1932, after the deposit in court by plaintiff of $10,000, the face amount of the policy, together with accrued interest, in accordance with said findings of fact and conclusions of law, a decree was entered canceling the policy in suit and discharging plaintiff from any further liability thereon. The differences between the defendants were adjusted subsequent to the entry of the decree and R. Morton Moss, as trustee, acquired all interest in the avails of the policy of insurance formerly claimed by his codefendant, Martha N. Moss, and he, alone, has appealed to this court.

▪ The first question presented is that raised by appellee's contention that the appeal should be dismissed because not taken within the time provided by the statute. The record discloses that on June 1, 1932, the chancellor made and entered his findings of fact and conclusions of law. No formal decree, however, was entered until June 13, 1932. On June 6, 1932, and prior to the entry of the final decree, defendants filed a joint motion "to set aside certain of the Findings of Fact and Conclusions of Law, and the order and judgment based thereon, and for a rehearing and new trial." It does not appear, however, that this motion was ever heard or passed on by the court. On September 12, 1932, the defendants filed a joint motion to set aside the findings of fact and conclusions of law and decree, and for rehearing and new trial. It appears that this motion was filed just within three months from the date of the entry of the decree, and, among other grounds, it challenged the validity of the decree for the reason it was entered without ruling on the prior motion, and without notice to the defendants. This motion was denied by the court on the 15th day of February, 1933, and on May 13, 1933, just within three months from the order overruling motion for new trial, the appeal was taken.

While it is well settled that a motion for a new trial in a law case, made with reasonable promptness after the entry of judgment, will toll the beginning of the statutory time within which an appeal can be taken, the benefits of this rule should not be extended to those who fail to act with reasonable diligence. To permit a litigant to extend the time for appeal by filing a motion for new trial on the last day allowed by law for taking an appeal, and then waiting until just prior to the expiration of the ninety-day period after the order denying the motion for a new trial before taking the appeal, would, in the absence of a showing excusing the delay, afford opportunity for a gross abuse of the rule and defeat the purpose of the statute. The record in this case, however, discloses that the defendants' first motion for a new trial was made promptly, and it does not appear that it was ever acted upon by the court. This fact, together with the further showing that the decree was entered without notice and without knowledge on the part of the defendants would, in our opinion, be sufficient to establish the good faith of the defendants and excuse the delay. Under the exceptional circumstances of the case we feel that the appeal was taken within time and, therefore, will not be dismissed.

The essential facts as disclosed by the evidence may be stated as follows: The insured, Herman Y. Moss, was, in his lifetime, a resident of the city of St. Louis, Mo., where he was engaged in business; in the spring of 1929 he had an attack of the flu which confined him to his bed for some weeks, and in April of that year he went to Readland, Ark., to visit his married sister, Florence Meyer, and to convalesce from his illness. At that time he was physically weak, extremely nervous, despondent, and emotional; he was having marital trouble and a divorce suit was pending between him and his wife; his business affairs were in good condition and he was solvent; his physical and mental condition improved considerably during his stay at his sister's home, and on May 27, 1929, the date of his death, he had apparently entirely recovered his health. His sister's grown son was employed in patrolling the levee along the river at night, and he slept during the day; while on duty he carried a pistol and it was his habit upon coming home from work to lay the loaded pistol in the holster down at any convenient place about the house; the insured had a fear and dread of firearms, and upon several occasions he protested against his nephew's carelessness in leaving the loaded pistol about the house, and on at least one occasion he picked the pistol up and took it to his nephew's room and placed it on the dresser; on the 27th day of May, 1929, prior to the shooting, the pistol was seen on the dresser in the nephew's room. A few minutes before his death the decedent was conversing with his sister and her husband; he called his brother at St. Louis and talked with him over the long distance telephone, informing

him that he would leave Readland for his home in St. Louis the next day; he left the room and appeared to be in good spirits; some moments later a shot was heard, and upon investigation the insured was found dead or dying on the floor of the bathroom which opened into the bedroom occupied by the nephew; the pistol had been removed from the holster and was lying on the bathroom floor with the hammer resting upon an exploded shell; a 32-caliber lead bullet, similar to those in the pistol, was found on the bathroom floor; the bullet had evidently entered deceased's body at a point just below the left nipple and proceeded upward and diagonally through the body to a point just below the right shoulder blade. The proof of death furnished by appellant to the insurance company as a basis for his claim for the proceeds of the policy stated the cause of death as "suicide."

While there is a voluminous record in the case and the appeal is based upon some fifty-one assignments of error, the real question presented by the appeal is whether or not the District Court erred in holding that Herman Y. Moss, the insured, committed suicide while sane. As there was no eyewitness to the shooting, it is impossible for any one to say with absolute certainty just what the real facts are. Appellee contends that the evidence shows that insured committed suicide while sane, and the appellant contends that it appears by the evidence that the fatal shot was purely accidental and that if death was the result of suicide that the insured was insane when the shot was fired. There is, in the record, some support for each one of the three theories; but we cannot say that either of the theories advanced by appellant is supported by the greater weight or preponderance of the evidence. Appellant places great reliance upon the testimony of one Alex B. Mermod, who testified as an expert. His testimony was based upon the testimony of other witnesses as to their recollection of what they observed with reference to the location of powder marks upon the shirt of insured at the time of his death, and from this testimony and other testimony as to the location of the wound and the course of the bullet through the body of insured, the expert testified that the muzzle of the revolver must have been at least twenty-four inches from the point where the bullet entered the body of insured, and that it would have been impossible for insured to have held the revolver in either hand when the shot was fired. Assuming that the testimony as to the powder

marks on the shirt was authentic and the opinion of the expert based thereon was correct, it would, in view of the other facts in the case, preclude any possibility that the fatal shot was self-inflicted. But the testimony of the expert is purely opinion evidence and the testimony upon which it is based was given some eighteen or twenty months after the witness' examination of the powder marks on the shirt of the decedent. In view of the opportunity for a failure in memory or honest mistake on the part of the witnesses, it would not be at all surprising if the Chancellor attached less importance and weight to this evidence than does counsel for the appellant. The Chancellor was, by stipulation of the parties, constituted the trier of the facts; he heard all of the evidence and observed the witnesses; it was his duty to pass upon the credibility of the witnesses and determine the weight which should be given to their testimony. His conclusion was that under all of the evidence in the case it was more probable that insured came to his death by suicide while sane than in any other manner, and there is nothing in the record to justify this court in reversing the decree based upon that conclusion. The burden was clearly upon the appellant to establish the truth of one of the two theories advanced by him, and while there is in the record some evidence tending to support each of appellant's theories, we are convinced that neither of them is established by the greater weight or preponderance of the evidence. Clearly the record discloses either: (1) A failure of proof, in which event appellant could not recover. Eggen v. United States (C. C. A.) 58 F.(2d) 616; Ewing v. Goode (C. C.) 78 F. 442; Gunning v. Cooley, 281 U. S. 98, 50 S. Ct. 231, 74 L. Ed. 720, and cases cited. Or (2) a decided conflict in the evidence, in which event, under the well-settled rule of this court, the findings of the Chancellor should not be disturbed. State of Iowa v. Carr (C. C. A.) 191 F. 257; Harper v. Taylor (C. C. A.) 193 F. 944; Kennedy et al. v. City of White Bear Lake (C. C. A.) 39 F.(2d) 608; Road Improvement District No. 1, Franklin County, Arkansas et al. v. Missouri Pacific Railroad Company (C. C. A.) 2 F.(2d) 340; Johnson v. Umsted (C. C. A.) 64 F.(2d) 316, and cases cited.

A discussion of the numerous assignments of error would extend this opinion to unreasonable length and would serve no useful purpose.

Suffice it to say that we have examined the entire record and duly considered each

assignment of error, and finding no prejudicial error in the record, the decree appealed from is affirmed.